SUSAN M. POORE v. FRANK JEFFERSON POORE

No. 8422DC579

(Filed 2 July 1985)

1. **Divorce and Alimony § 30— equitable distribution—valuation of professional practice**

In valuing a professional practice for equitable distribution purposes, a court should consider the following components of the practice: (a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities.

2. **Divorce and Alimony § 30— equitable distribution—valuation of professional practice**

Among the approaches courts may find helpful in valuing a professional practice are: (1) an earnings or market approach, which bases the value of the practice on its market value, or the price which an outside buyer would pay for it taking into account its future earning capacity; and (2) a comparable sales approach which bases the value of the practice on sales of similar businesses or practices. Courts might also consider evidence of offers to buy or sell the particular practice or an interest therein, and if the practice is conducted as a partnership, and the value of the practice or an interest therein is set in a partnership or redemption agreement, the value set in the agreement should be considered but not treated as conclusive.

3. **Divorce and Alimony § 30— equitable distribution—valuation of professional practice—consideration of goodwill**

Goodwill is an asset that must be valued and considered in determining the value of a professional practice for purposes of equitable distribution.

4. **Divorce and Alimony § 30— equitable distribution—valuation of goodwill**

There is no set rule for determining the value of the goodwill of a professional practice; rather, each case must be determined in light of its own particular facts. The determination of the existence and value of goodwill is a question of fact, not of law, and should be made with the aid of expert testimony.

5. **Divorce and Alimony § 30— equitable distribution—valuation of goodwill of professional practice**

Among the factors which are relevant in valuing the goodwill of a professional practice are the age, health and professional reputation of the practitioner, the nature of the practice, the length of time the practice has been in existence, its past profits, its comparative professional success, and the value of its other assets.

**6. Divorce and Alimony § 30— equitable distribution—valuation of goodwill of professional practice**

Any legitimate method of valuation that measures the present value of goodwill by taking into account past results and not the post-marital efforts of the professional spouse is a proper method of valuing goodwill.

**7. Divorce and Alimony § 30— equitable distribution—valuation of goodwill—required findings**

In ordering a distribution of marital property, a court should make specific findings regarding the value of a spouse's professional practice and the existence and value of its goodwill, and should clearly indicate the evidence on which its valuations are based, including the valuation method or methods on which it relied. If it appears on appeal that the trial court reasonably approximated the net value of the practice and its goodwill, if any, based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed.

**8. Divorce and Alimony § 30— equitable distribution—unsupported valuation of dental practice**

The trial court's valuation of a solely owned dental practice for equitable distribution purposes was not based on a sound method of evaluation and was not supported by the evidence.

**9. Divorce and Alimony § 30— equitable distribution—dental license as separate property**

The trial court erred in failing to find that defendant's license to practice dentistry was separate property owned by defendant. G.S. 50-20(b)(2).

**10. Divorce and Alimony § 30— equitable distribution—pension and profit sharing interests of professional association—husband's separate property—consideration of wife's contributions as homemaker**

Defendant husband's rights in pension and profit sharing plans of his solely owned professional association were "retirement rights" within the meaning of former G.S. 50-20(b)(2) and thus constituted separate property of defendant. However, the trial court was required to consider plaintiff wife's contributions as a homemaker to the acquisition of defendant's vested interests in the pension and profit sharing plans in determining an equitable distribution of the marital property. G.S. 50-20(c)(12).

APPEALS by plaintiff and defendant from *Cathey, Judge.* Order entered 12 January 1984 in District Court, IREDELL County. Heard in the Court of Appeals 4 February 1985.

*Curtis, Millsaps and Chesson by Joe T. Millsaps for plaintiff appellant-appellee.*

*Brinkley, Walser, McGirt, Miller and Smith by Walter F. Brinkley for defendant appellant-appellee.*

COZORT, Judge.

The primary questions presented by this appeal are: (1) how a solely-owned professional association should be valued for purposes of equitable distribution; and (2) whether the defendant-husband's rights in his profit sharing plan from his dentistry practice are separate or marital property included within the term "retirement rights" under G.S. 50-20(b)(2) (Cum. Supp. 1981). Both parties have appealed from the court's order, contending that the court erred in its valuation of the professional association and in its determination that an equal division of the marital property was equitable. We remand for a new hearing.

On 16 September 1982, plaintiff filed a complaint seeking an absolute divorce based on one year's separation, alimony, child custody, child support, and an equitable distribution of the marital property. Judgment of divorce was entered and the issues of alimony, child custody, and child support were resolved. Hearings were held on the matter of the distribution of the marital property at which evidence was presented which tends to show the following, in pertinent part:

The parties were married on 5 August 1967. At that time plaintiff was a certified teacher, and defendant was in dental school. After graduating from dental school in 1968, defendant worked with the Army for three years and then went into a private dental practice in Mooresville. In 1978, defendant incorporated his solo practice and thereafter operated as a professional association. During the marriage, plaintiff primarily worked as a homemaker and cared for the parties' three children; however, she also worked outside the home for short periods of time as a teacher and as a department store clerk before the parties' first child was born in 1971. The parties separated on 25 August 1981. During their marriage and prior to their separation, the parties acquired both real and personal property of substantial value.

On 12 January 1984, the court entered an order in which it concluded that an equal division of the marital property would be equitable and divided the property accordingly. From the order entered, both parties appeal.

The first question presented is whether the trial court correctly valued the defendant's professional association. The divi-

sion of marital property upon divorce is to be accomplished by using the net value of the property, *i.e.*, its market value, if any, less the amount of any encumbrance serving to offset or reduce the market value. *See* G.S. 50-20(c); *Alexander v. Alexander*, 68 N.C. App. 548, 315 S.E. 2d 772 (1984). When a divorce is granted on the ground of one year's separation, as was done here, the marital property must be valued as of the date of the parties' separation. *See* G.S. 50-21(b). In accordance with G.S. 50-20(c) and 50-21(b), the court here determined the net value of the professional association on the date of the parties' separation and used that figure in determining an equitable distribution of the property. The parties argue, however, that the court erred in finding that the net value of the professional association on that date was $73,561. Defendant-husband argues the court overvalued it, and plaintiff-wife argues the court undervalued it.

In its order of distribution the court found that the professional association had a net value on the date of the parties' separation of $73,561 and explained its valuation as follows:

> Establishing the value of this Professional Association is extremely difficult. While the Court considered the valuations placed on the business by both parties incorrect, rather than obtaining a third party evaluation on the business as it should have, the Court valued the business at $73,561.00 considering available evidence including the tangible assets and net income of the business.

The court further found that "[t]he plaintiff failed to show any goodwill value to be placed on the business."

The evidence regarding the value of the professional association may be summarized as follows:

Defendant's testimony showed that as of 31 July 1981 the professional association had assets, including the lot on which it was located, the equipment owned by it, its checking and savings accounts, and its accounts receivable, of a total value of $50,394, and had liabilities of $61,405. Thus, the professional association had a negative value of $11,011 as of 31 July 1981. The gross income of the professional association for its fiscal year ending 31 October 1981 was approximately $232,000 and its gross income for the previous year was approximately $204,743. It had net income

of approximately $6,000 in 1979, $700 in 1980, between $5,000 and $6,000 in 1981, and suffered a net loss of approximately $1,200 in 1982.

Edward Grissom, a certified professional business consultant employed by a firm which had been providing management services to defendant for several years, testified for defendant. Grissom had been involved previously in the purchase and sale of dental practices and had experience in appraising their value. His testimony showed that as of 31 August 1981 defendant's professional association had assets worth $73,601 and liabilities of $66,012. According to his calculations, the practice had a net worth as of 31 August 1981 of $7,549. In his opinion, the professional association had no goodwill of significant value. He defined goodwill as any corporate earnings in excess of reasonable compensation. His opinion was based on the fact that defendant's practice had retained very little or no earnings during the period of time it had been incorporated. This factor indicated to him that defendant had received reasonable compensation from the practice and nothing else. He further testified that he was familiar with the average income of dentists practicing in situations comparable to that of defendant, and that defendant's compensation was average when compared with the income of these dentists.

Boyd P. Falls, a certified public accountant practicing in Charlotte, testified for plaintiff. Falls had previously evaluated businesses for sale purposes and had experience in the purchase of accounting firms, which he explained were professional businesses like dental practices. In his opinion, the value of defendant's professional association was $232,000 which was its gross income for the fiscal year in which the parties separated. Falls based his opinion on his knowledge of the dental industry for the past 15-20 years which he acquired through observation and exchange of information, and what dentists had told him their practices were worth. He testified that he had been informed by a dentist in Charlotte that "on today's market a good dental business is selling for a hundred percent of current gross volume," and that he had relied on that information in substantial part in forming his opinion as to the value of the professional association. In valuing the practice, Falls relied entirely on its gross sales or receipts and did not consider its net income, its assets, or its liabilities. He stated that the valuation method used by him was

the method most commonly used to value a professional practice and noted that what he was valuing could be called the goodwill of the practice.

The question of how to value a solely-owned professional association for purposes of equitable distribution has not been addressed previously by our courts. However, this Court has considered the valuation of a spouse's interest in a professional partnership for equitable distribution purposes. *See Weaver v. Weaver*, 72 N.C. App. 409, 324 S.E. 2d 915 (1985). In *Weaver*, we stated that there is no single best approach to valuing an interest in a professional partnership, and that various appraisal methods can and have been used to value such interests. *Id.* at 412, 324 S.E. 2d at 917. The task of a reviewing court on appeal is to determine whether the approach used by the trial court reasonably approximated the net value of the partnership interest. *Id.* at 412, 324 S.E. 2d at 917-18. If it does, the valuation will not be disturbed. *Id.*

Similarly, there is no single best approach to valuing a professional association or practice, and various approaches or valuation methods can and have been used. *See* L. Golden, *Equitable Distribution of Property* Sec. 7.10, at 221 (1983). B. Goldberg, *Valuation of Divorce Assets* Sec. 8.3, at 203 (1984). It is generally agreed that in valuing a professional practice, or an interest therein, for equitable distribution, it should not make any significant difference whether the practice is conducted as a corporation or professional association, a partnership, or a sole proprietorship. *See* Goldberg, *supra*, at 201; 2 J. McCahey, *Valuation and Distribution of Marital Property* Sec. 22.08, at 22-99 (1984).

[1, 2] The valuation of each individual practice will depend on its particular facts and circumstances. *See* Golden, *supra*, Sec. 7.09, at 216. In valuing a professional practice, a court should consider the following components of the practice: (a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities. *See In Re Marriage of Lopez*, 38 Cal. App. 3d 93, 113 Cal. Rptr. 58 (1974); *Stern v. Stern*, 66 N.J. 340, 331 A. 2d 257 (1975). Among the valuation approaches courts may find helpful are: (1) an earnings or market approach, which bases the value of the practice on its

market value, or the price which an outside buyer would pay for it taking into account its future earning capacity; and (2) a comparable sales approach which bases the value of the practice on sales of similar businesses or practices. *See* McCahey, *supra*, Sec. 22.08. Courts might also consider evidence of offers to buy or sell the particular practice or an interest therein. *See* Goldberg, *supra*, at 205. If the practice is conducted as a partnership, and the value of the practice or an interest therein is set in a partnership or redemption agreement, then the value set in the agreement should certainly be considered but should not be treated as conclusive. *See Weaver, supra.* Other guidelines and valuation approaches have also been suggested and they too may be of assistance to courts. *See, e.g.,* McCahey, *supra*; L. Schwechter and R. Quintero, *Valuing the Professional Service Corporation* Vol. 3, No. 12 Equitable Distribution Reporter, at 142-44 (June 1983); J. Hempstead, *Valuation of a Closely-Held Business* Vol. 2, No. 4 Equitable Distribution Reporter, at 51-2 (October 1981).

The component of a professional practice which is the most controversial and difficult to value, and yet often the most valuable, is its goodwill. Golden, *supra*, Sec. 7.10, at 222. Goodwill is commonly defined as the expectation of continued public patronage. *Matter of Marriage of Fleege*, 91 Wash. 2d 324, 325, 588 P. 2d 1136, 1138 (1979). It is an intangible asset which defies precise definition and valuation. *See, e.g.,* Black's Law Dictionary 625 (rev. 5th ed. 1979); *Dugan v. Dugan*, 92 N.J. 423, 457 A. 2d 1 (1983). It is clear, however, that goodwill exists, that it has value, and that it has limited marketability. *See Jewel Box Stores v. Morrow*, 272 N.C. 659, 158 S.E. 2d 840 (1968) (the execution of a covenant not to compete, in connection with the sale of a business, is essentially a sale of the goodwill of the business).

[3]   Although some courts have refused to consider goodwill in valuing a professional practice, *see, e.g., Nail v. Nail*, 486 S.W. 2d 761 (Tex. 1972), the vast majority of courts which have ruled on the question have held that the goodwill of a professional practice is property of value which should be included among the assets distributed upon the dissolution of marriage. *See Dugan, supra*, at 433, 457 A. 2d at 6; *Fleege, supra*, at 326, 588 P. 2d at 1138; *see generally*, Annot., 52 A.L.R. 3d 1344 (1973). We agree that goodwill is an asset that must be valued and considered in determining the value of a professional practice for purposes of equitable

distribution. *See Weaver, supra.* We must now determine whether the court below erred in valuing the professional association, including its goodwill.

[4, 5] There is no set rule for determining the value of the goodwill of a professional practice; rather, each case must be determined in light of its own particular facts. *See, e.g., Wisner v. Wisner,* 129 Ariz. 333, 631 P. 2d 115 (1981); *Hurley v. Hurley,* 94 N.M. 641, 615 P. 2d 256 (1980); *Marriage of Goger,* 27 Or. App. 729, 557 P. 2d 46 (1976). The determination of the existence and value of goodwill is a question of fact and not of law (*see* Goldberg, *supra,* Sec. 8.4, at 207) and should be made with the aid of expert testimony. *See* Golden, *supra,* Sec. 7.11, at 226. Courts are cautioned to value goodwill "with great care, for the individual practitioner will be forced to pay the ex-spouse 'tangible' dollars for an intangible asset at a value concededly arrived at on the basis of some uncertain elements." *Dugan, supra,* at 435, 457 A. 2d at 7. Among the factors which may affect the value of goodwill and which therefore are relevant in valuing it are the age, health, and professional reputation of the practitioner, the nature of the practice, the length of time the practice has been in existence, its past profits, its comparative professional success, and the value of its other assets. *See, e.g., Hurley* and *Goger, supra; see also* Golden, *supra,* at 223-24.

[6] Various appraisal methods can be and have been used to value goodwill. *See, e.g., Dugan, supra.* Any legitimate method of valuation that measures the present value of goodwill by taking into account past results, and not the postmarital efforts of the professional spouse, is a proper method of valuing goodwill. *See In Re Marriage of King,* 150 Cal. App. 3d 304, 197 Cal. Rptr. 716 (1984). One method that has been widely accepted in other jurisdictions is to determine the market value of the goodwill, *i.e.,* the price that a willing buyer would pay to a willing seller for it. *See, generally,* McCahey, *supra,* Sec. 23.04(2)(a), at 23-57; Golden, *supra,* at 224. Another method that has been received favorably is a capitalization of excess earnings approach as described in *Dugan, supra,* at 439-40, 457 A. 2d at 9-10, and McCahey, *supra,* Sec. 23.04(2)(b), at 23-58 through 23-59. Under this approach, the value of goodwill is based in part on the amount by which the earnings of the professional spouse exceed that which would have been earned by a person with similar education, experience, and skill

as an employee in the same general locale. *Dugan, supra.* It has also been suggested that the value of goodwill be based on one year's average gross income of the practice, or a percentage thereof, *see Mueller v. Mueller,* 144 Cal. App. 2d 245, 301 P. 2d 90 (1956), and that evidence of sales of comparable practices is relevant to the determination of its value. *See In Re Marriage of Nichols,* 43 Colo. App. 383, 606 P. 2d 1314 (1979).

[7] In ordering a distribution of marital property, a court should make specific findings regarding the value of a spouse's professional practice and the existence and value of its goodwill, and should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied. On appeal, if it appears that the trial court reasonably approximated the net value of the practice and its goodwill, if any, based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed.

In the present case, defendant's evidence tends to show that the professional association, or practice, had little or no net value because its liabilities were approximately equal to the value of its assets, and that the practice had no goodwill of significant value. Defendant's expert determined that the practice had no goodwill by using an excess earnings approach. Plaintiff's evidence tends to show that the professional association had goodwill and that the total value of the professional association, including its goodwill, was $232,000. Plaintiff's expert valued the professional association and its goodwill primarily by using a comparable sales and gross income approach.

[8] The trial court rejected both parties' valuations and instead valued the practice based on "available evidence including the tangible assets and net income" of the practice. It appears the court found the practice had no goodwill. However, the court's valuation of the practice does not appear to be based on a sound method of valuation nor is it supported by the evidence. For this reason, we vacate the equitable distribution order and remand for a new hearing on the value of the professional association. In valuing the professional association, the court should clearly state whether it finds the practice to have any goodwill, and if so, its value, and how it arrived at that value. The court may appoint an additional expert witness under Rule 706 of the North Carolina Rules of Evidence if needed.

We now turn to the trial court's finding of no separate property and its conclusion that an equal division of the marital property was equitable. Plaintiff contends the court erred in failing to find that defendant owned substantial separate property in the form of his license to practice dentistry and his vested and non-vested interests in the pension and profit sharing plans of his professional association, and that therefore an equal division of the marital property would be an unequitable division in defendant's favor. The court found that neither party owned any separate property. This finding is not supported by the evidence.

[9, 10] The evidence clearly shows the defendant had a license to practice dentistry which G.S. 50-20(b)(2) classifies as separate property. Thus, it was error for the trial court to fail to find that this was separate property owned by defendant. The evidence also shows the defendant had both vested and the expectation of nonvested interests in pension and profit sharing plans of his professional association and that this property had substantial value. At the time this action was instituted, 16 September 1982, G.S. 50-20(b)(2) (Cum. Supp. 1981) provided that all vested and the expectation of nonvested pension or retirement rights were to be considered separate property. *Johnson v. Johnson*, 74 N.C. App. 593, 328 S.E. 2d 876 (1985). Although the term "retirement rights" is not defined in the statute, we believe that defendant's rights in his profit sharing plan are included within that term. Any deferred compensation plan, whether structured as a pension, a profit sharing, or a retirement plan, may properly be denominated a retirement plan. *See* Goldberg, *supra*, Sec. 9.2, at 231. Accordingly, any benefits from such plans should be termed retirement benefits. Courts in other jurisdictions have consistently treated interests in pension and profit sharing plans in the same way, and we see no reason to act differently. *See, e.g., Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W. 2d 844 (1981); *In Re Marriage of Hunt*, 78 Ill. App. 3d 653, 397 N.E. 2d 511 (1979). Thus, the court erred in failing to find that defendant's interests in the pension and profit sharing plans are separate property. The court further erred by awarding plaintiff a contingent interest in defendant's pension and profit sharing benefits because those interests are separate property not subject to distribution.

In determining an equitable division of marital property, a court is to take into consideration the separate property owned

by each party at the time the division of property is to become effective. *See* G.S. 50-20(c)(1); *Loeb v. Loeb*, 72 N.C. App. 205, 216, 324 S.E. 2d 33, 41, *cert. denied*, 313 N.C. 508, 329 S.E. 2d 393 (1985). Because of the errors committed by the court with respect to the separate property owned by defendant, this cause must be remanded for a redetermination of an equitable division of the marital property, with the trial court giving appropriate consideration to the separate property owned by defendant.

Plaintiff further contends the court erred in failing to consider her contributions to the value of defendant's separate property interests in the pension and profit sharing plans. She argues that she, as housewife, mother, and family bookkeeper, by conservative household expenditures, permitted defendant to reduce his salary and to stash away each year beginning in 1979 sizable amounts of money for his retirement through the pension and profit sharing plans of his professional association, and that the court should have considered her contributions to the acquisition of that separate property in determining an equitable division of the marital property. In light of our legislature's subsequent recognition that vested pension and retirement rights should be considered marital property, *see* G.S. 50-20(b)(1) (Cum. Supp. 1983), we agree that fairness requires that plaintiff's contributions as a homemaker to the acquisition of at least defendant's vested interests in the pension and profit sharing plans be considered by the court under G.S. 50-20(c)(12) in determining an equitable division of the marital property. On remand, the court should so consider plaintiff's contributions and assign them the weight which it, in its discretion, believes is appropriate.

Lastly, plaintiff argues that several of the findings of fact are not supported by the evidence. The findings to which plaintiff objects are those relating to the value of the parties' real estate, the value of one of the parties' automobiles, the parties' checking and savings accounts, and the application of the rent paid by the professional association towards the mortgage on the property on which it was located. We find plaintiff's arguments without merit. We have carefully examined the record and have determined that the findings in question are supported by competent evidence; thus, they are conclusive. *See Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975); *see also* 1 Strong's N.C. Index 3d *Appeal and Error* Sec. 57.2 (1976).

For the reasons stated herein the 12 January 1984 order of equitable distribution is vacated. The case is remanded for a hearing on the issue of the value of the professional association, a new determination of equitable distribution, including whether equal is equitable, and entry of an appropriate order consistent with this opinion.

Vacated and remanded.

Chief Judge HEDRICK and Judge WHICHARD concur.