## CIRCUIT COURT OF HENRICO COUNTY

Harriett M. Russell

v.

John A. Russell

June 29, 1988

Case No. 83C898

By JUDGE JAMES E. KULP

This matter is before the Court of Appeals dated January 16, 1987. The remand calls for an identification and evaluation of the marital property, pursuant to the provisions of Code § 20-107.3(A). The Court of Appeals also directed a reexamination of spousal and child support in light of whatever new or different considerations flow from the additional proceedings. After discovery, the Court conducted a hearing on December 21, 1987, at which time additional evidence was heard. The Court requested the parties to file memorandums after the transcript of the December 21 hearing had been prepared. Memorandums were received on February 9, 1988. The parties are relying upon the evidence previously presented as well as the evidence adduced on December 21, 1987. Since the prior proceedings were conducted by a different judge, it has been necessary for the Court to review all of the proceedings. Now having considered all of the evidence and the memorandums, the Court renders this opinion.

The parties were married on June 20, 1970, and separated on April 13, 1983. By decree of March 20, 1984, the

Court granted Mrs. Russell a Bed and Board divorce on the grounds of willful desertion. A Final Decree of divorce was entered on June 18, 1984, on the grounds of willful desertion of Mrs. Russell by Dr. Russell for a period of more than one year. Two children were born of this marriage, Clare and Ian, whose dates of birth are January 11, 1975, and December 11, 1979, respectively. In its Final Order dated October 1, 1985, the Court granted custody of both infant children to Mrs. Russell and fixed child support at $900.00 per month and spousal support at $1500.00 per month.

## I. *Equitable Distribution*

At the hearing on December 21, 1987, the parties identified the marital property as the parties' home located at 1007 Francisco Road, the furnishings held by both parties, and the furnishings in Dr. Russell's office. By stipulation the parties agree that the present value of the marital home is $136,000, upon which a mortgage in the amount of $78,000 is outstanding. The equity in the home then is agreed to be $58,000. The parties stipulated that the value of the furnishings in possession of each party, which had been arrived at by appraisal, is $7,083 for Mrs. Russell and $11,789 for Dr. Russell.

The furniture in Dr. Russell's office had a cost listed of $23,251 for 1986 income tax purposes. (*See* plaintiff's Exhibit 3). The furniture had been purchased between 1976 and 1984. Dr. Russell took a depreciation allowance of $2,393 in 1986, and his expert testified that it would depreciate for tax purposes at the rate of about 10 per cent annually. (TR. 12/21/87 pp. 58-59). Plaintiff's expert valued the office furniture between $5,000 and $7,500. (TR. 12/21/87 p. 27). In *Mitchell v. Mitchell*, 4 Va. App. 113 (1987), the Court of Appeals observed that the trial court should determine the value of the parties' assets as of a date as near as practicable to the date of trial. The burden rests upon the litigants to present sufficient evidence for the Court to determine the value of the property of the parties. Furthermore, the Court cannot arbitrarily reject credible evidence of value merely because other evidence might be more accurate. *Bowers v. Bowers*, 4 Va. App. 610 (1987). The

evidence before the Court is that the furniture in Dr. Russell's office is not the type which would take a lot of abuse. (TR. 12/21/87 p. 27). Taking into account all of the evidence, the Court finds that the office furniture should be valued at $7,500.

There also exists a grand piano which was not valued in the appraisal of either party. This piano was purchased for $6,000. Mrs. Russell testified that she did not want the piano, but that Dr. Russell did want it. She further testified that Dr. Russell could have the piano free and clear. (TR. 12/21/87 pp. 130, 135). Dr. Russell argues that the piano is separate property since it was purchased during the separation. The evidence before the Court, however, is that the piano was purchased during the marriage. (TR. 12/21/87 p. 134). The party claiming property as separate has the burden of producing evidence. *Rexrode v. Rexrode*, 1 Va. App. 385 (1986). No evidence to the contrary having been presented, the Court finds the piano to be marital property with a value of $6,000.

The most serious matter upon which the parties cannot agree is the valuation of Dr. Russell's practice. Both parties presented testimony from Certified Public Accountants who have had experience in buying and selling medical practices. William K. Stephens, II, plaintiff's expert, testified that in evaluating a medical practice he took into account the specialty, growth, referral base, possibility of patient retention, value of fixed assets, historical collection rate of accounts receivable, and general business management of the office (TR. 12/21/87 pp. 21, 22). He further testified that goodwill was a factor in selling a practice. He defined this as a percentage of the gross earnings from 25 to 50 percent. (TR. 12/21/87 p. 23). Mr. Stephens testified that goodwill, patient base or stream of earnings were interchangeable terms. (*Id.*). Based upon the evidence that Dr. Russell's gross income from his practice was $100,000, the goodwill would be valued at from $25,000 to $50,000. Added to this would be the value of the furniture and 80 percent of the accounts receivable to arrive at the value of Dr. Russell's practice. (TR. 12/21/87 p. 27). Mr. Stephens further testified that in his opinion Dr. Russell's practice should be valued in the 40 to 50 percent range of gross income for goodwill

due to the perpetuation of patient visits over a period of time. (TR. 12/21/87 pp. 26, 27).

On the other hand, Samuel L. Derieux, defendant's expert, testified that in his opinion the medical practice had a value of approximately $10,000 which takes into account the value of the furniture and accounts receivable. (TR. 12/21/87 p. 69). Mr. Derieux testified that in his opinion goodwill was made up of three factors: (a) excess earnings; (b) organization to assume continuity; and (c) transferability of patients. In his view none of these factors existed so he was of the opinion there was no goodwill to Dr. Russell's practice. (TR. 12/21/87 pp. 49-51).

The Court has not found where the Virginia courts have addressed the issue of the valuation of a professional practice, and neither party has referred to any Virginia authority. There can be no doubt, however, that a professional practice has value, and the parties here are not contesting this fact, but only disagree as to the value of Dr. Russell's practice. The authorities generally agree that in valuing a professional practice for equitable distribution, it should not matter whether the practice is conducted as a corporation or professional association, a partnership, or a sole proprietorship. See B. Goldberg, *Valuation of Divorce Assets* Sec. 8.3 at 201 (1984); 2 J. McCahey, *Valuation and Distribution of Marital Property*, Sec. 22.08 at 22-19 (1984).

There does not appear to be any single best approach to valuing a professional practice, and various approaches or valuation methods can and have been used. See Goldberg, *supra*, at 203; L. Golden, *Equitable Distribution of Property* Sec. 7.10 at 221 (1983).

In *Poore v. Poore*, 331 S.E.2d 266 (N.C. App. 1985), the Court set out certain components of the professional practice which should be considered in determining its value: "(a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in process; (c) its goodwill, if any; and (d) its liabilities." 331 S.E.2d at 270.

In the present case both experts have generally taken into account each of these components in valuing Dr. Russell's practice. The divergence has been on the

question of goodwill. Although there have been some courts which have refused to recognize goodwill in valuing a professional practice, the vast majority of courts confronted with this question have held that the goodwill of a professional practice is property of value which should be included in equitable distribution. *See generally*, Annot., 52 A.L.R.3d 1344 (1973).

There have been a number of methods used to value goodwill. One method is to determine the market value of goodwill, *i.e.*, the price that a willing buyer would pay to a willing seller for it. *See* McCahey, *supra*, Sec. 23.04(2)(a) at 23-57; Golden, *supra*, at 224. Another method is capitalization of excess earnings. *See Dugan v. Dugan*, 457 A.2d 1, 9-10 (N.J. 1982). Also the Court in *Mueller v. Mueller*, 301 P.2d 90 (Cal. App. 1956), suggested that the value of goodwill be based upon one year's average gross income of the practice, or a percentage thereof. The Court in *Poore, supra*, refused to adopt any single method of valuation, but instead held that "[a]ny legitimate method of valuation that measures the present value of goodwill by taking into account past results, and not the postmarital efforts of the professional spouse, is a proper method of valuing goodwill." 331 S.E.2d at 271.

In this case Mrs. Russell's expert used the percentage of gross income approach, whereas Dr. Russell's expert utilized the capitalization of excess earnings method. In this Court's opinion, the simplicity of the percentage of gross income method has much to commend its use. The parties, as well as attorneys and courts, can easily understand such an approach. Furthermore, this approach would allow the parties to arrive at an equitable distribution of the marital property without extensive hearings and expense. This methodology has been used in evaluating goodwill in an accountant's practice as well as in the medical profession. *See Dugan, supra*, 457 A.2d at 8.

Considering all the evidence which was presented, the Court finds that the percentage of gross income is a legitimate method by which to establish the value of goodwill of a professional practice. This is particularly true under the facts in this case. The Court is of the opinion, and so finds, that Dr. Russell has intentionally kept the profit from his practice at an artificially low margin. For the past five years Dr. Russell has used

three afternoons per week to travel to Washington for psychoanalysis. (TR. 12/21/87, p. 94). Furthermore, he is billing only about 35 hours per week, and his hourly rate averages $60 per hour while the general prevailing rate is $75 per hour. (TR. 12/21/87, p. 22). Because of these factors, Dr. Russell's income has remained approximately the same for the last five years when it would generally be expected that at his age and experience his income would be ' climbing. (TR. 12/21/87, p. 21). Taking all of these circumstances into account, it is clear that Dr. Russell could substantially raise the profit from his practice if he chose to do so. Under the facts of this case, the Court believes it would be inappropriate to use the capitalization of excess earnings to determine the goodwill of Dr. Russell's practice.

Mr. Stephens testified that Dr. Russell's goodwill should be valued at the 40 to 50 percent range of gross income because of the perpetuation of patient visits over a period of time. Using this method, the Courts finds that the goodwill of Dr. Russell's practice has a value of $40,000.

To determine the value of Dr. Russell's practice one should consider the fixed assets, which the Court has valued at $7,500 for the office furniture; the accounts receivable, which are valued at $3,200 (80 percent of $4,000); and the value of goodwill, which the Court has indicated is $40,000. This totals $50,700 as the value of Dr. Russell's practice for consideration as marital property.

The Court finds that the total value of marital property is:

$ 58,000 - marital home
  7,083 - furniture with Mrs. Russell
 11,789 - furniture with Dr. Russell
  6,000 - piano
 50,700 - Dr. Russell's medical practice
 ─────
$133,563

In determining whether to grant a monetary award the Court must consider the equities and the rights and interests of each party in the marital property. Further-

more, the amount of any award shall be determined after a consideration of the factors set forth in § 20-107.3(E).

In this case the real property is titled in the names of the parties, and each party has an equal equity in this property. The personalty was purchased during the marriage and the parties have an equal interest in it. The medical practice is owned by Dr. Russell, but the Court finds Mrs. Russell has an equitable interest in this asset, since her efforts allowed Dr. Russell to obtain his medical degree and as a mother and homemaker she has allowed Dr. Russell to pursue his practice free from concerns concerning these matters. Therefore, the Court finds that a monetary award to Mrs. Russell is warranted.

These parties were married for thirteen years, and in the early years Mrs. Russell worked in order to allow Dr. Russell to pursue his medical training. Mrs. Russell ceased working after the birth of their second child to devote her full attention to child rearing and being a homemaker. Dr. Russell is forty-one years of age and Mrs. Russell is thirty-nine. Both parties are enjoying good health.

Dr. Russell maintains that during the separation of the parties he has satisfied some $29,674 in marital debts, and he should receive credit or reimbursement for his contribution of $14,837 toward Mrs. Russell's share of these liabilities. He argues that had he not made these payments, the net value of the marital estate would have been reduced by $29,674. By the same token Mrs. Russell expended $4,300 to have the marital residence painted in order to maintain it. (TR. 12/21/88 pp. 63-64).

The Court is also required to consider the circumstances and factors which contributed to the dissolution of the marriage. Simply put, this marriage broke up when Dr. Russell admitted to a number of extramarital affairs.

After a full consideration of all the factors contained in § 20-107.3(E) the Court determines that the amount of the monetary award to Mrs. Russell should be a lump sum in the amount of $25,000.

The Court further awards each party a fifty percent interest in the marital residence, the furniture and the grand piano listed as marital property.

## II. *Support*

In the Court's Order of October 1, 1985, child support was fixed at $900 per month, and spousal support was fixed at $1,500 per month. As far as the Court can determine, there has been no change in these support payments over this period of time.

At this time Mrs. Russell is working and has a gross monthly income of $1,414.53. Dr. Russell shows a monthly gross income of $5,916. An examination of the income and expense exhibit submitted by Mrs. Russell on October 4, 1983, shows total expenses in the amount of $3,657 per month. Mrs. Russell's expense exhibit 7 introduced on December 21, 1987, shows total expenses in the amount $3,873. These figures show a slight increase in expenses over the past five years as would be expected. The main difference, however, is that now Mrs. Russell is working and has a net disposable income of $1,084 per month.

After a careful consideration of all the factors in §§ 20-107.1 and 20-107.2 the Court finds that child support should be increased to $1000 per month and spousal support should be reduced to $900 per month. These changes in support are to commence on July 1, 1988.

Mrs. Russell has asked the Court to award attorney's fees and costs in the amount of $8,205. An examination of counsel's statement shows that $3,250 of this amount was incurred during the appeal upon which Dr. Russell was successful. The Court notes, however, that the Court of Appeals returned this case to this Court on the grounds that the record contained no evidence of the fair market value of the marital home. It now turns out that all the while Dr. Russell was in possession of an appraisal of the value of the marital home. (*See* TR. 12/21/87 pp. 113-114; plaintiff's Exhibit 5).

Taking into account all matters relevant to this case, the Court awards Mrs. Russell attorney's fees in the amount of $5,275 and costs in the amount of $764.20.