DWIGHT M. FITZGERALD, Plaintiff v. KATHERINE T. FITZGERALD, Defendant

No. COA02-1500

(Filed 2 December 2003)

**1. Divorce— equitable distribution—profit sharing plan**

Defendant's interest in a profit-sharing plan should have been classified, valued, and divided in an equitable distribution action even though it was not included in the pre-trial order. The existence of the plan was not disclosed until the hearing.

**2. Divorce— equitable distribution—value of marital home— findings**

An equitable distribution action was remanded for evidence and findings on the fair market value of the marital home at the

date of separation, and for consideration of any post-separation increase in value as a distributional factor.

**3. Divorce— equitable distribution—valuation of surgical practice**

The valuation of a surgical practice for an equitable distribution was remanded where the trial court did not identify the evidence on which it based its valuation or the method it used to reach its figure.

**4. Divorce— alimony—standard of living—findings**

The trial court's findings supporting an alimony award were sufficient where plaintiff argued that the court erred by not making findings regarding the standard of living to which the parties were accustomed during the marriage, but the court made the ultimate finding that defendant needed the awarded amount to pay her current expenses and anticipated needs.

**5. Divorce— alimony—duration and manner of payment—findings**

An alimony order was remanded for further findings explaining the reasoning for the duration and manner of payment of the award. N.C.G.S. § 50-16.3(A)(c)

**6. Divorce— equitable distribution—post-separation mortgage payments—ultimate finding**

The trial court's finding in an equitable distribution action supported an unequal distribution where there was evidence to support the ultimate finding that defendant benefitted by increased equity in the marital home resulting from plaintiff's mortgage payments after the date of separation.

Appeal by plaintiff and defendant from judgment entered 3 June 2002 by Judge Jonathan L. Jones in Catawba County District Court. Heard in the Court of Appeals 27 August 2003.

*Starnes & Killian, P.L.L.C., by Mark L. Killian, for plaintiff-appellant.*

*Sigmon, Sigmon, Isenhower & Poovey, by C. Randall Isenhower, for defendant-appellant.*

FITZGERALD v. FITZGERALD

[161 N.C. App. 414 (2003)]

HUNTER, Judge.

Dwight M. Fitzgerald ("plaintiff") appeals from an amended judgment and order of equitable distribution and alimony filed 3 June 2002. Katherine T. Fitzgerald ("defendant") brings forward a cross-assignment of error to the same amended judgment and order. We reverse and remand to the trial court on both the equitable distribution and alimony portions of the judgment and order.[1]

Plaintiff and defendant were married on 1 June 1974 and separated on 4 April 1998. A judgment of absolute divorce was entered on 2 June 1999. The parties stipulated that plaintiff was a supporting spouse and defendant was a dependent spouse and that defendant was entitled to alimony.

The evidence presented at a hearing beginning on 12 March 2002 tends to show plaintiff has been employed as a general surgeon since 1974 and as of the date of separation had a fifty-percent (50%) partnership interest in his surgical practice, Catawba Surgical Associates, P.A. Both parties presented expert testimony on the valuation of plaintiff's ownership interest in the surgical practice. Plaintiff's expert valued plaintiff's interest at $89,500.00, based on quarterly financial reporting from 31 March 1998. Defendant's expert valued plaintiff's ownership interest at $170,000.00. The trial court, without making any findings as to how it arrived at its valuation of plaintiff's ownership interest in the surgical practice, found plaintiff's interest to be valued at $125,000.00 on the date of separation.

Plaintiff also introduced two appraisals of the marital home. The first appraisal, dated 7 December 1999, estimated the home's value at $395,000.00. The second appraisal, dated 1 July 2001, also appraised the home at a value of $395,000.00. Neither party presented evidence as to the fair market value of the house on the date of separation. Again, without making any findings as to how it arrived at its figure, the trial court found that the marital home had a fair market value on the date of separation of $375,000.00. Furthermore, the trial court made no findings as to the valuation of the marital home on the date of distribution and did not consider any post-separation appreciation in the value of the marital home as a distributional factor.

Defendant testified that she had returned to work in 1994 and that she had no retirement assets. On cross-examination, she admit-

1. Neither party assigns error to the child support portion of the judgment and order.

ted she had a vested interest in a profit-sharing plan through her employer, which had vested in 1997. Plaintiff subsequently introduced into evidence a statement from defendant's employer showing defendant's vested account balance in the profit-sharing plan since 1997. Defendant had not listed this profit-sharing plan in her equitable distribution affidavit filed with the trial court on 12 October 1999. The trial court made no finding regarding defendant's interest in the profit-sharing plan and it was not included in the equitable distribution order.

The trial court found plaintiff's net marital estate was $215,468.00 and defendant's net marital estate was $77,347.00, and that an equal distribution would require plaintiff to pay a distributive award of $69,060.50. In determining whether an equal distribution was equitable, the trial court considered a number of factors including: (1) plaintiff had made both first and second mortgage payments on the marital home from the date of separation to the date of distribution, including approximately $160,000.00 in excess of his required post-separation support, as well as making other household bill payments and payments for upkeep and repairs to the marital home; (2) plaintiff is a medical doctor earning at least $270,400.00 per year and was earning at least $250,000.00 at the date of separation, while defendant has a high school diploma and a two-year radiology technician degree with some phlebotomist training and was presently capable of earning $30,000.00 per year; (3) separate property of defendant was put into plaintiff's medical practice; (4) the duration of the marriage and age of the parties; and (5) defendant gave up her pursuit of her career to care for the children. The trial court then found, based on a consideration of these factors, that the equities worked in favor of plaintiff, equal distribution was not equitable, and ordered plaintiff to pay a distributive award of $60,000.00.

With respect to the alimony portion of the judgment and order, the trial court found defendant needed at least $6,000.00 per month in alimony and that plaintiff was capable of paying that amount. The trial court ordered plaintiff to pay permanent alimony of $6,000.00 per month until defendant's death, remarriage, or cohabitation to be paid into the office of the Clerk of Superior Court.

The issues are whether: (I) the trial court erred by failing to consider evidence of defendant's profit-sharing plan; (II) the trial court erred by failing to make specific findings regarding its valuation of the marital home on the date of separation and any increase in value as of the date of distribution; (III) the trial court was required to

make specific findings regarding its valuation of plaintiff's ownership interest in his surgical practice; and (IV) the award of permanent alimony was supported by the findings of fact. The sole issue from defendant's cross-appeal is whether (V) the findings of fact and conclusions of law are insufficient to support an unequal distribution in favor of plaintiff.

I.

**[1]** Plaintiff first contends the trial court erred in failing to consider evidence of defendant's profit-sharing plan provided by her employer and by failing to make findings of fact classifying, valuing, and distributing defendant's interest in the profit-sharing plan. We agree and remand this case to the trial court to equitably distribute defendant's interest in the profit-sharing plan.

In making an equitable distribution of marital assets, the trial court is required to undertake a three-step process: "(1) to determine which property is marital property, (2) to calculate the net value of the property, fair market value less encumbrances, and (3) to distribute the property in an equitable manner." *Beightol v. Beightol*, 90 N.C. App. 58, 63, 367 S.E.2d 347, 350 (1988). In this case, defendant admitted to having a profit-sharing plan vesting in 1997, and plaintiff introduced evidence to show the vested balance from 1997 to 2000. This is property that the trial court was required to classify, value, and divide.

Defendant argues that plaintiff has waived equitable distribution of the profit-sharing plan by not including it in the pre-trial order, citing as authority *Hamby v. Hamby*, 143 N.C. App. 635, 547 S.E.2d 110 (2001). In *Hamby*, this Court held that where a party entered into a pre-trial agreement classifying a deferred compensation plan as marital property, and that agreement was subsequently incorporated into a pre-trial order, the party waived any argument that the deferred compensation plan was separate property. *Id.* at 643, 547 S.E.2d at 115. That case is, however, distinguishable from the case *sub judice*, as in this case plaintiff had entered into no agreement concerning defendant's profit-sharing plan, and in fact, could not have entered into such an agreement as defendant failed to disclose its existence until the hearing. Thus, the equitable distribution portion of the order must be remanded for the trial court to include the profit-sharing plan in its consideration of how to' equitably distribute the parties' property.

FITZGERALD v. FITZGERALD

[161 N.C. App. 414 (2003)]

## II.

**[2]** Plaintiff next contends the trial court erred in finding the fair market value of the marital home on the date of separation was $375,000.00, and by failing to consider any post-separation increase in the value of the home as a distributional factor. We agree.

A trial court's findings of fact in an equitable distribution case are conclusive if supported by any competent evidence. *See Mrozek v. Mrozek*, 129 N.C. App. 43, 48, 496 S.E.2d 836, 840 (1998). "In an equitable distribution proceeding, the trial court is to determine the net fair market value of the property based on the evidence offered by the parties." *Walter v. Walter*, 149 N.C. App. 723, 733, 561 S.E.2d 571, 577 (2002) (footnote omitted). Furthermore, "[w]here there is evidence of active or passive appreciation of the marital assets after the date of separation, the court must consider the appreciation of the asset as a [distributive] factor." *Fox v. Fox*, 103 N.C. App. 13, 21, 404 S.E.2d 354, 358 (1991).

In this case, both parties concede they presented no evidence of the fair market value of the marital home on the date of separation and the only evidence presented on the value of the house were two appraisals valuing the house at $395,000.00, one performed over a year after the parties' separation and one performed more than three years after the separation. Nothing in the findings of the trial court supports a fair market value of the house on the date of separation of $375,000.00. Thus, as there is no evidence upon which to base a finding of the fair market value of the house on the date of separation, we must remand this case to the trial court for the taking of further evidence and findings of fact on this issue. *See Coleman v. Coleman*, 89 N.C. App. 107, 108-09, 365 S.E.2d 178, 179-80 (1988). Even if the trial court properly valued the house on the date of separation, it erred in failing to consider any post-separation increase in value of the property, evidenced by the appraisals, as a distributional factor.

## III.

**[3]** Plaintiff further contends the trial court erred in failing to make specific findings regarding the valuation of plaintiff's partnership interest in the surgical practice. We agree.

"In valuing a marital interest in a business, the task of the trial court is to arrive at a date of separation value which 'reasonably approximates' the net value of the business interest." *Offerman v. Offerman*, 137 N.C. App. 289, 292, 527 S.E.2d 684, 686 (2000) (quoting

*Poore v. Poore*, 75 N.C. App. 414, 422, 331 S.E.2d 266, 272 (1985)). " '[A] [trial] court should make specific findings regarding the value of a spouse's professional practice and the existence and value of its goodwill, and should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied.' " *Id.* at 293, 527 S.E.2d at 686 (quoting *Poore*, 75 N.C. App. at 422, 331 S.E.2d at 272). A trial court's valuation of a professional practice will be upheld on appeal if it appears the trial court reasonably approximated the net value of the practice and its goodwill based on competent evidence and on a sound valuation method. *Id.*

In this case, plaintiff's expert testified plaintiff's interest in the surgical practice was valued at $89,500.00 and defendant's expert testified it should be valued at $170,000.00. The trial court apparently rejected both expert's valuations and, without making any findings as to the methodology it applied or the facts upon which its valuation was based, found plaintiff's interest in the surgical practice to be $125,000.00. As the trial court failed to identify the evidence on which it based its valuation or the method it used to reach its figure, we must reverse and remand this case to the trial court for further findings of fact on the valuation of plaintiff's interest in his surgical practice.

IV.

[4] Plaintiff finally contends the trial court's findings do not support the award of alimony in the amount of $6,000.00 per month and further that the trial court failed to make required findings as to the reasons for the duration of the alimony and the manner of payment.

A trial court's decision on the amount of alimony to be awarded is reviewed for an abuse of discretion. *See Barrett v. Barrett*, 140 N.C. App. 369, 371, 536 S.E.2d 642, 644 (2000). In *Friend-Novorska v. Novorska*, 143 N.C. App. 387, 395, 545 S.E.2d 788, 794, *aff'd per curiam*, 354 N.C. 564, 556 S.E.2d 294 (2001), this Court held:

[F]indings of fact required to support the amount, duration, and manner of payment of an alimony award are sufficient if findings of fact have been made on the ultimate facts at issue in the case and the findings of fact show the trial court properly applied the law in the case.

FITZGERALD v. FITZGERALD

[161 N.C. App. 414 (2003)]

*Id.* (footnote omitted). Under N.C. Gen. Stat. § 50-16.3A(c) (2001), the trial court is also required to set forth the reasons for the amount of the alimony award, its duration, and manner of payment.

In this case, plaintiff first contends the trial court's findings were insufficient to support the amount of alimony awarded. Plaintiff does not assign error to the trial court's findings of fact in the alimony portion of the order, and they are thus treated as supported by competent evidence and are binding on appeal.[2] *See McConnell v. McConnell*, 151 N.C. App. 622, 626, 566 S.E.2d 801, 804 (2002). Plaintiff instead argues that although the trial court made findings regarding defendant's current living expenses and needs, it nevertheless erred by not making further findings as to the standard of living to which the parties were accustomed during the marriage. The trial court, however, made the ultimate finding of fact that defendant needed at least $6,000.00 per month in alimony to pay her current expenses and anticipated needs.

We conclude the trial court made sufficient ultimate findings of fact to support its award of alimony. *See Williamson v. Williamson*, 140 N.C. App. 362, 365, 536 S.E.2d 337, 339 (2000) (trial court must make ultimate findings of fact to support the amount of alimony awarded). Accordingly, based upon its findings, the trial court did not abuse its discretion in awarding defendant $6,000.00 per month.

[5] The trial court, however, did not make required findings as to the reasons for making the duration of the alimony continuous until defendant dies, remarries, or cohabits, and why it is to be paid directly to the Clerk of Superior Court. This Court has held that a trial court's failure to make any findings regarding the reasons for the amount, duration, and the manner of payment of alimony violates N.C. Gen. Stat. § 50-16.3(A)(c). *See id.* In *Williamson*, as in this case, the trial court, without making any findings as to its reasoning for the duration of the alimony or manner in which it was to be paid, ordered alimony to be paid until the death of a party or the dependent spouse's remarriage or cohabitation and that it be paid directly to the clerk of court. *See id.* Although we conclude that, unlike *Williamson*,

---

2. We nevertheless note that the evidence in the record from defendant's alimony affidavit shows defendant's actual expenses totaled $4,555.75 per month, and a separate column indicates the difference in her expenses and anticipated needs was an additional $1,122.00 per month, calculated by subtracting the amount already expended from the amount needed. The trial court also found that there was $170.00 worth of amended expenses. Totaling these amounts together results in $5,847.75 per month needed by defendant to cover her expenses and needs.

the trial court in this case made sufficient findings to support the amount of the alimony award, we are nevertheless bound by that decision, *see In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), to remand the alimony portion of the order to the trial court to make further findings of fact explaining its reasoning for the duration of the alimony award and its manner of payment.

V.

Defendant's Cross-Appeal

[6] On cross-appeal, defendant contends the trial court's findings in the equitable distribution portion of the judgment and order are insufficient to support an unequal distribution of the parties' marital property in favor of plaintiff. Specifically, defendant argues the trial court erred in considering as a distributional factor that plaintiff had paid in excess of his required minimum payments on the second mortgage. Defendant asserts that the evidence shows plaintiff admitted drawing on the equity line after the date of separation and then repaying those amounts, such that the balance was approximately the same as on the date of separation and consequently, defendant did not benefit from any increase in equity in the marital home, which was distributed to her.

The trial court, however, actually found that although between the date of separation and October 2000 plaintiff was under no order to pay post-separation support, during that time period plaintiff "made [first] mortgage payments of at least $61,000 and [second] mortgage payments of at least $48,000" *and* that plaintiff then also paid in excess of his required payments after October 2000. These payments on both mortgages, the trial court further found, substantially benefitted defendant as those payments resulted in increased equity in the marital home, which was distributed to her.

"In determining whether an [unequal] distribution is equitable, the trial court must make findings of fact showing its due consideration of the evidence presented by the parties in support of the factors enumerated under [N.C. Gen. Stat. §] 50-20(c)." *Daetwyler v. Daetwyler*, 130 N.C. App. 246, 249, 502 S.E.2d 662, 665 (1998), *aff'd per curiam*, 350 N.C. 375, 514 S.E.2d 89 (1999). The trial court need not make exhaustive evidentiary findings, but must find the ultimate facts. *Id.* Under Section 50-20(c), in determining whether an unequal distribution is equitable, the trial court must consider evidence of

FITZGERALD v. FITZGERALD

[161 N.C. App. 414 (2003)]

"[a]cts of either party to maintain, preserve, develop, or expand . . . the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution." N.C. Gen. Stat. § 50-20(c)(11a) (2001).

In this case, there was evidence that plaintiff continued to make the payments on both the first and second mortgages after the date of separation and before he was required to pay post-separation support. There is evidence that plaintiff did pay in excess of $61,000.00 toward the first mortgage between the date of separation and October 2000.[3] There is also evidence defendant continued to make payments on the second mortgage in an amount over $41,000.00 and made the excess payments listed by the trial court.[4]

Although plaintiff did admit the balance on the second mortgage equity line of credit remained about the same as on the date of separation, his payments on the first mortgage would still have had the effect of increasing the equity in the marital home. Thus, there was evidence to support the trial court's ultimate finding that defendant benefitted substantially by increased equity in the marital home, which was distributed to her, resulting from plaintiff's mortgage payments after the date of separation. Accordingly, the trial court's finding on this factor supports its conclusion that an unequal distribution was equitable and defendant's assignment of error is rejected.

As we have concluded, however, that the trial court erred in failing to (1) consider evidence of defendant's profit-sharing plan, (2) make proper findings of fact regarding the valuation of the marital home, (3) make proper findings regarding the valuation of plaintiff's interest in his surgical practice, and (4) make proper findings regarding the duration and manner of payment of alimony, this case must be reversed and remanded.

Reversed and remanded.

Judges TIMMONS-GOODSON and ELMORE concur.

---

3. This figure may be calculated by combining figures from plaintiff's exhibits 3 (mortgage payments made), 5 (showing monthly payments made on various accounts between June 1999 and October 2000, and 9 (showing statement of mortgage payments for 1998).

4. This is evidenced by plaintiff's exhibit 5.