IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-625

No. COA21-485

Filed 20 September 2022

Cumberland County, No. 15 CVD 1837

JASON LOGUE, Plaintiff,

v.

CHESSICA LOGUE and CHESSICA A. LOGUE, DDS, PA, Defendants.

Appeal by defendant from judgment entered 29 July 2020 by Judge A. Elizabeth Keever in Cumberland County District Court. Heard in the Court of Appeals 9 March 2022.

> *Wyrick Robbins Yates & Ponton LLP, by Charles W. Clanton and K. Edward Greene, for plaintiff-appellee.*

> *Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by Alicia Jurney, for defendant-appellant.*

DIETZ, Judge.

¶ 1        This family law appeal concerns the valuation of a dental practice. Business valuation always is a fraught undertaking, and particularly so for a small professional business like the one in this case. By far, the greatest value-adding component of this business is its human capital—the skill and reputation of the dentists who draw paying customers to the business. This component typically is reflected on a balance sheet as part of the intangible asset known as goodwill.

¶ 2        Here, the trial court used a rudimentary but accepted method of valuation: it examined the market value of Defendant's stake in the business based on an arms-length transaction two years before the parties separated—a transaction that involved a valuation of the business and calculation of goodwill by outside experts. The court then determined that there were no changes to the business that might substantially alter that market valuation (and corresponding goodwill calculation) in the intervening two years.

¶ 3        On appeal, Defendant challenges this valuation of the business. She contends that the trial court's chosen method of valuation is unreliable and that the court wrongly calculated the business's goodwill without the benefit of expert testimony.

¶ 4        We reject these arguments. As explained below, the trial court used a reliable method of valuation. To be sure, the market-value approach used by the court has flaws. But the parties did not present the court with evidence or expert testimony that would have permitted the court to incorporate additional methodology into its analysis. Moreover, although expert testimony ordinarily is necessary for a court to calculate goodwill in the first instance, the court here did not calculate goodwill in the first instance. Instead, the court examined the market value of the business in an arms-length sale transaction (which included a goodwill calculation done by outside experts) and then found that there were no changes to the business in the interim that might have substantially impacted that market value. We therefore hold that

the trial court's findings, and its valuation methodology, were appropriate, and we affirm the trial court's judgment.

**Facts and Procedural History**

¶ 5 Plaintiff Jason Logue and Defendant Chessica Logue married in 2004, separated in 2015, and divorced in 2016. As part of the separation and divorce, the parties sought equitable distribution of their marital assets. Among those assets is Chessica Logue's stake in her dental practice known as Chessica A. Logue, DDS, PA.

¶ 6 The trial court entered its first equitable distribution judgment in 2018. As part of the trial court's equitable distribution judgment, the court valued the dental practice. Defendant appealed that valuation, arguing that the trial court's findings were insufficient to support the court's valuation.

¶ 7 In 2020, this Court vacated the trial court's order and remanded for additional findings and a revised valuation determination. *Logue v. Logue*, 270 N.C. App. 820, 839 S.E.2d 873, 2020 WL 1683094 (2020) (unpublished) (*Logue I*). We held that the trial court properly classified the dental practice as marital property but that the court did not make sufficient findings of fact to support the valuation of the business at the date of separation. *Id.* at \*5. Our holding turned largely on the absence of findings that identified the valuation methodology that the trial court employed in its analysis:

> At the hearing, neither party provided appraisals of the

value of Logue P.A. at the time of separation. Although both parties testified about the appraisal and three pro formas created in 2012, and their respective tax returns since 2014, both parties presented conflicting evidence as to what the value of Logue P.A. was at the time of separation and what they relied on in making their determinations. Even if the trial court relied on the information provided in those documents, the trial court's findings do not specify what values were relied on from those documents.

. . .

The court did not make findings explaining how the value of the assets included in the purchase price of [the seller's] interest had varied between the 2012 purchase price and the 2015 date of separation. Thus, we are unable to determine how the trial court arrived at the value of $219,565.00.

*Id.* at *5–6. We remanded this case with instructions to conduct a new valuation of the business using "specific and clear methodology." *Id.*

¶ 8 On remand, the trial court held a hearing and then filed a second equitable distribution judgment. In this judgment, the trial court provided a more detailed explanation of its valuation analysis, which we quote here for context during our analysis:

When wife joined Hedgecoe Dentistry in 2009, it was with the hope that she would eventually be able to buy into the practice. The practice enjoys an excellent reputation within the Fayetteville community. The practice was owned by a father (Joel Hedgecoe) and son (David Hedgecoe) and the father was considering selling his share and gradually retiring. In 2012, discussions began about the purchase of the father's 50% interest in the partnership. In preparation for negotiations on the sale price, the practice was

appraised by Roger K. Hall & Company, Inc. of Charlotte. The practice was subsequently reappraised by the same company and husband and wife hired a second firm in Raleigh to review the appraisal. Husband and wife met with the appraisers in Charlotte and with Brent Sumner of McFadyen and Sumner, CPAs of Fayetteville. McFadyen Sumner was used by the couple to prepare their taxes and for other accounting work. As part of the evaluation, the company prepared a document anticipating potential future income of wife, the son, and the father from the practice.

Ultimately, the Hedgecoes and the Logues agreed to a price and wife created an S Corporation (Chessica Logue, DDS, PA) for the actual purchase. Wife is the 100% owner of the S Corporation. The purchase price based on the appraisal was $1,249,800.00 and was completely financed.

. . .

Joel Hedgecoe continued to work in the practice after the sale and was paid by the practice as an associate. He continued to work past the time originally contemplated when the sale was consummated so that wife developed her own patients rather than taking over many of his. As of August 2018, he had slowed considerably and only worked on Mondays and Tuesdays.

No evidence was presented as to his current status in the practice. Despite Joel Hedgecoe continuing past the anticipated date, wife is receiving income from the practice generally as anticipated.

. . .

McFadyen Sumner, the CPA firm that prepared the taxes for the S Corporation and for the parties, provided as part of the tax documents introduced as Plaintiff's Exhibit 20 a listing of the assets of the corporation. From 2013 through 2017, the asset statement continued to list goodwill of $1,018,800.00. The court finds this to be reasonable considering that Dr. Joel Hedgecoe continued to work as

previously, and wife continued to develop her own clientele. Persons looking at the practice would not see any change that might impact the goodwill. As of December 31, 2014, the other assets of the business had the following values as listed on the asset sheet – equipment and furniture at $186,848.00, restrictive covenants at $10,000.00 and patient files at $10,000.00. The Court finds the value of the S Corporation on the date of separation to be $1,225,648.00 (goodwill, equipment and furniture, restrictive covenants, and patient files) less $1,030,253.00 (the balances payable on the 3 debts as of the date of separation) for a value of $195,395.00.

The trial court then applied this valuation of the business in its determination of the appropriate distributive award in its judgment. Defendant again appealed.

**Analysis**

Defendant appeals the trial court's latest equitable distribution judgment, arguing that, on remand, the court again failed to apply reliable methodology to value the dental practice.

There is "no single best approach to valuing an interest in a professional partnership" and "various appraisal methods can and have been used to value such interests." *Poore v. Poore*, 75 N.C. App. 414, 419, 331 S.E.2d 266, 270 (1985). "The task of a reviewing court on appeal is to determine whether the approach used by the trial court reasonably approximated the net value of the partnership interest." *Id.*

To ensure meaningful appellate review of this valuation analysis, the trial court "should make specific findings regarding the value of a spouse's professional

practice" and "should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied." *Id.* at 422, 331 S.E.2d at 272.

¶ 13    There are many possible approaches to valuation, all of which carry risks of over- or under-valuing the business. These approaches range from simply examining the balance sheet of the business and calculating its book value (by subtracting liabilities from assets), to complicated forecasting techniques that examine discounted cash flows and enterprise value using projections for growth and the expected life of the business.

¶ 14    One acceptable valuation approach is to assess the market value of a stake in a closely-held business by examining the fair market value paid for that stake in a recent arms-length transaction—in other words, "the price that a willing buyer would pay to a willing seller for it." *See id.* at 421, 331 S.E.2d at 271.

¶ 15    The trial court used this approach. The court first examined the price Defendant paid for her stake in the dental practice approximately two years before the date of separation and explained why this was an arms-length transaction that involved a valuation by outside experts. The court then examined the state of the business in the intervening time period, including examination of the balance sheet, tax records, and evidence about the progress in transitioning the most experienced dentist out of full-time practice.

¶ 16       This last factor is particularly important because the largest recorded asset of the practice, by far, is the intangible asset known as goodwill. That goodwill is largely a reflection of the practice's human capital and, specifically, the reputation of Dr. Joel Hedgecoe, the most senior dentist at the practice, whose skills helped the business cultivate an "excellent reputation within the Fayetteville community" over the years. The court examined whether this goodwill figure may have changed and found no evidence that it had: "the asset statement continued to list goodwill of $1,018,800.00. The court finds this to be reasonable considering that Dr. Joel Hedgecoe continued to work as previously, and wife continued to develop her own clientele. Persons looking at the practice would not see any change that might impact the goodwill."

¶ 17       Accordingly, we hold that the trial court's methodology—employing a market-value approach based on a recent arms-length transaction and then examining whether any changes in the intervening period likely impacted that market value in a significant way—is an acceptable, reliable method of valuation. We therefore reject Defendant's argument that the trial court failed, in its second attempt at valuation, to use a reliable method of valuation that reasonably approximates the value of Defendant's stake in the business.

¶ 18       Defendant also contends that, even if the overall methodology is reliable, the trial court erred because it considered the goodwill of the business without the benefit of expert testimony. In *Poore*, this Court held that "the existence and value of goodwill

is a question of fact" and that it "should be made with the aid of expert testimony." 75 N.C. App. at 421, 331 S.E.2d at 271. But this statement concerned a trial court that was calculating goodwill in the first instance—that is, a court examining a business's goodwill without the benefit of recent calculations of that goodwill by outside valuation experts. *Id.* In that scenario, the court is engaging in a valuation methodology typically referred to as book value or balance sheet value. This involves the court assessing the assets and liabilities of the practice, subtracting liabilities from assets, and arriving at a net value for that practice.

¶ 19        Here, the trial court used a different methodology. As described above, the court employed a market-value approach based on a recent arms-length transaction. In that approach, when the evidence in the record demonstrates that there were no substantial changes at the practice that could have impacted the goodwill calculation, the court appropriately can find that the goodwill calculation established in that earlier transaction remains applicable in the current valuation, without the need for additional expert testimony.

¶ 20        We conclude by re-emphasizing that "there is no single best approach to valuing a professional association or practice, and various approaches or valuation methods can and have been used." *Id.* at 419, 331 S.E.2d at 270. Valuation is complicated, and those with the skills to do it effectively can demand a high price for their services. Thus, in many family law proceedings, if the parties had unlimited

resources, they could offer sophisticated valuation evidence, including testimony from experts that would permit the court to examine a range of valuation methodologies, take them all into account, and arrive at an accurate, highly defensible value for the business.

¶ 21　　But parties in family law proceedings do not have unlimited resources. What trial courts more frequently encounter are records containing quite limited evidence and testimony from which to value a business. Nevertheless, when equitable distribution is sought, the trial court must "determine the net fair market value of the property based on the evidence offered by the parties." *Quesinberry v. Quesinberry*, 210 N.C. App. 578, 585, 709 S.E.2d 367, 373 (2011).

¶ 22　　In this case, the market-value approach employed by the trial court admittedly is a rudimentary one. But it was sufficiently reliable to reasonably approximate the value of Defendant's stake in the business, particularly in light of both parties' choice not to retain experts and provide additional evidence and testimony that would permit the court to engage in more sophisticated valuation methodology. We therefore affirm the trial court.

## Conclusion

¶ 23　　We affirm the trial court's judgment.

AFFIRMED.

Judges TYSON and COLLINS concur.