BARBARA A. MINTER, PLAINTIFF v. FRANK E. MINTER, DEFENDANT

No. 9121DC748

(Filed 3 August 1993)

1. **Divorce and Separation §§ 119, 121 (NCI4th)— equitable distribution — assets classified as marital — inability to trace separate property — classification proper**

   Evidence was sufficient to support the trial court's finding that defendant failed to carry his burden of proof that certain assets were separate property, and the trial court properly classified the assets, including brokerage house accounts initially funded with inherited stocks, checking accounts, real property, limited partnerships, gold investments, and silver coins, as marital property, since defendant could not trace funds which might have been separate property initially but which became commingled with marital property.

   **Am Jur 2d, Divorce and Separation §§ 883, 890.**

2. **Divorce and Separation § 151 (NCI4th)— equitable distribution — separate property investments by husband — distributional factor to be considered**

   Separate property investments which defendant contributed to the marital estate over his twenty-five-year marriage to plaintiff should have been considered by the trial court as a distributional factor under N.C.G.S. § 50-20(c)(12).

   **Am Jur 2d, Divorce and Separation § 920.**

MINTER v. MINTER

[111 N.C. App. 321 (1993)]

Appeal by defendant from judgment entered 9 November 1990 by Judge R. Kaison Keiger in Forsyth County District Court. Heard in the Court of Appeals 25 August 1992.

*White and Crumpler, by Fred G. Crumpler, Jr., G. Edgar Parker, Joan E. Brodish, Dudley A. Witt, Christopher L. Beal and Robert G. Spaugh, for plaintiff-appellee.*

*Petree, Stockton & Robinson, by Lynn P. Burleson and Edwin W. Bowden, for defendant-appellant.*

ORR, Judge.

Defendant raises three issues on appeal. First, that the trial court erred in concluding that the defendant failed to meet his burden of proof in showing that certain assets were separate in nature; second, that the trial court erred in determining that no portion of the assets were separate in nature; and third, that the trial court failed to consider the defendant's separate property contributions as a distributional factor pursuant to N.C. Gen. Stat. § 50-20(c). We disagree as to the first two issues but agree as to the third.

Barbara A. Minter (plaintiff-appellee) instituted this action for equitable distribution against Frank E. Minter (defendant-appellant) on June 11, 1986. In her complaint, she alleged that the parties had acquired certain marital property, including "the marital residence of the parties; other real estate; a corporation known as Salem Gymnastic Center, Ltd.; savings, stocks, and bonds; pension and retirement plans, automobiles, furniture, and other items of property." The defendant denied these allegations in his answer, contending that certain assets were traceable to separate property, and therefore not subject to equitable distribution.

Specifically, defendant asserted that the following accounts, real estate, and personal property were separate:

(1) Smith Barney Vantage Account—This account was established in 1967. Inherited stocks, newly acquired stocks, the proceeds from dividends and the sale of the stocks were periodically deposited into the account from its inception in 1967.

(2) Merrill Lynch Account—established as a stock trading account in the early 1960's. Proceeds from inherited and newly purchased stocks were deposited into this account.

**MINTER v. MINTER**

[111 N.C. App. 321 (1993)]

Both the "Vantage" account and the Merrill Lynch account were established and held in defendant's name only. Additionally, defendant established three checking accounts into which he deposited monies from various sources, including dividends from stocks.

(1) First Citizens Account—Defendant established a savings account in 1972, closing it in 1978. In 1975, he established a checking account, which was closed in 1979.

(2) IBM Credit Union Account—This account was established in 1978, and replaced the First Citizens account. During the years 1978-1985 dividends from IBM stock were deposited into this account, as were proceeds from the sale of IBM stock. These proceeds were automatically deposited into defendant's account by his employer on a quarterly basis.

(3) Wachovia Checking Account—This account was opened in 1981, and was initially funded with monies from the IBM Credit Union account. Deposits from the sale of stocks were also deposited into this account.

Using funds drawn from these accounts, defendant purchased the following real and personal property:

(1) Building and lot at 1901 Margaret Street and lot at 1907 Margaret Street—These purchases were primarily funded with monies from the IBM Credit Union Account. The lot at 1901 Margaret Street was purchased in August 1980. The building was constructed on the lot during the fall of 1980. The vacant lot at 1907 Margaret was purchased in January of 1981.

(2) Limited Partnerships—Defendant purchased six limited partnerships during the course of the marriage.

(3) Dreyfus Gold Deposits—Defendant purchased an investment called "Dreyfus Gold Deposits".

(4) Bagged Silver Coins—Defendant purchased these coins in 1981-82.

Defendant presented evidence showing that he purchased or inherited thirty-one different stocks prior to his marriage, and that at the time of the separation of the parties, he retained ownership of only three of the original stocks. He contended that the resulting assets that were presently owned at the time of separation were actually traceable to the three inheritances, one prior to his 1960

marriage to plaintiff, and two additional inheritances, one in 1969, and the other in 1975.

The evidence included testimony by the defendant, records, reports, and stipulations by the parties, as well as the testimony of an expert witness retained by the parties to review the transactions in the disputed accounts. The evidence tended to show that the defendant traded and invested from the "Vantage" and the Merrill Lynch accounts in both inherited and newly purchased stocks and investment ventures; that he opened an account with First Citizens Bank in 1972 and again in 1975; that with proceeds from dividends and the First Citizens account he opened the IBM Credit Union account, and thereafter, in 1981 established a checking account at Wachovia Bank & Trust, using funds from the IBM Credit Union account. With funds from the IBM and Wachovia accounts, he purchased the lots and building on Margaret Street. Similarly, he purchased the six limited partnerships as well as the Dreyfus Gold Deposits investments and bagged silver coins with funds from those accounts.

At the close of all the evidence, the trial court found that:

"With respect to defendant's above-mentioned Wachovia Bank and Trust Company checking account, IBM Credit Union account, Vantage account, Smith Barney IRA account, Merrill Lynch account, Shearson Lehman account, Dreyfus Gold deposits, and Bagged Silver Coins, defendant failed to trace said assets to a non-marital source of funds or property. In addition, defendant comingled marital assets and funds in the above mentioned Wachovia checking account, IBM Credit Union account, Vantage account, and Merrill Lynch account. Defendant failed to meet his burden of proving that the assets set forth in this paragraph are his separate property, and the Court finds that said assets are marital property."

The court further found that the

"real estate located on Margaret Street was deeded to the defendant, individually, during the marriage of the parties. Defendant failed to trace said the [sic] Margaret Street property and the funds used to purchase said property to a non-marital source of funds or property. Defendant failed to meet his burden of proving that the Margaret Street property is

his separate property, and the Court finds that the above-described Margaret Street commercial real estate is marital property."

As to the limited partnerships, the court also found that "Defendant failed to meet his burden of proof of proving that the assets . . . are his separate property. . . ."

Having determined all of the above-mentioned property to be marital, the trial court then determined that an equal distribution was not equitable. The court then made findings of fact concerning the parties' education, income, age, separate assets, the comparative health of the parties, as well as other considerations. The court then ordered the defendant to pay to plaintiff the sum of $255,724.74 as a distributional award, and further ordered that the marital house be deeded to the plaintiff.

I.

[1] Defendant contends in his first two assignments of error that the evidence presented at trial supports a finding that all or a portion of the disputed assets were separate property and that the trial judge committed reversible error in finding the property to be marital.

In deciding equitable distribution issues, the trial court is required, pursuant to N.C. Gen. Stat. §§ 50-20 *et seq.*, to identify, classify, then distribute all property belonging to the marital estate. The trial court is further required to make written findings of fact indicating that he has considered the evidence presented by the parties in making his identification and classification of the property. *Haywood v. Haywood*, 106 N.C. App. 91, 415 S.E.2d 565 (1992), *reversed in part on other grounds*, 333 N.C. 342, 425 S.E.2d 696 (1993).

The first step is classification by the trial court of all property owned by the parties as marital or separate as defined by the statute. N.C.G.S. § 50-20(a) (1992); *Cornelius v. Cornelius*, 87 N.C. App. 269, 271, 360 S.E.2d 703, 704 (1987). Marital property is defined as "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties," N.C.G.S. § 50-20(b)(1) (1992), but does not include property determined to be separate under N.C.G.S. § 50-20(b)(2). Separate property includes all real and personal property acquired by a spouse before marriage or acquired

by a spouse by bequest, devise, descent, or gift during the course of the marriage. N.C.G.S. § 50-20(b)(2) (1992). "Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance." *Id.*

Following classification, property classified as marital is distributed by the trial court, while separate property remains unaffected. *Hagler v. Hagler*, 319 N.C. 287, 289, 354 S.E.2d 228, 232 (1987). "The trial court must classify and identify property as marital or separate 'depending upon the proof presented to the trial court of the nature' of the assets." *Atkins v. Atkins*, 102 N.C. App. 199, 206, 401 S.E.2d 784, 787 (1991). "The burden of showing the property to be marital is on the party seeking to classify the asset as marital and the burden of showing the property to be separate is on the party seeking to classify the asset as separate." *Id.* "A party may satisfy her burden by a preponderance of the evidence." *Id.*

The party who claims that the property is marital must show by the preponderance of the evidence that the property was "acquired by either spouse or both spouses during the course of the marriage and before the date of separation of the parties, and [is] presently owned." *Freeman v. Freeman*, 107 N.C. App. 644, 651, 421 S.E.2d 623, 626 (1992), quoting N.C. Gen. Stat. § 50-20(b)(1). "If this burden is met and a party claims the property to be separate, that party has the burden of showing the property is separate." *Id.* The party seeking to show its separate nature must show by the preponderance of the evidence that the property was "acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage; [was] acquired by gift from the other spouse during the course of marriage [where] such an intention is stated in the conveyance; [or was] acquired in exchange for separate property . . . unless a contrary intention is expressly stated in the conveyance." N.C.G.S. § 50-20(b)(2). If both parties meet their burdens, then under the statutory scheme of N.C.G.S. § 50-20(b)(1) and (b)(2), the property is excepted from the definition of marital property and is, therefore, separate property." *Haywood, supra,* 106 N.C. App. at 97, 415 S.E.2d at 569.

MINTER v. MINTER

[111 N.C. App. 321 (1993)]

The courts of North Carolina have recognized that at times a single asset may be acquired through contributions of both marital and separate property, and have adopted the source of funds approach to distinguishing such contributions. *Wade v. Wade*, 72 N.C. App. 372, 325 S.E.2d 260, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985).

In the instant case, there was no dispute that the contested properties were acquired during the course of the marriage and before the date of separation and presently owned. N.C. Gen. Stat. § 50-20(b)(1). Once this showing had been made, the burden of proof necessary to show that the assets were marital had been met. The burden therefore shifted to the defendant husband to show that the source of the contested property was separate property, as defined by N.C.G.S. § 50-20(b)(2). Defendant presented evidence that he received three inheritances, consisting of stocks in various companies. However, on cross-examination, defendant gave the following testimony with respect to tracing of the contested assets:

Q. And as a result of selling all those stocks you inherited, there have been purchases of other stocks—

A. And real estate—

Q. —as a result of initial sales of those stocks you inherited. Correct?

A. That's right. Other stocks and real estate.

Q. And many of those stocks have been sold and other stocks bought and sold?

A. That's correct.

Q. And it would be impossible to trace every single sale from the stocks you inherited on—that you brought into the marriage as of date of marriage the exact monies from those stocks and those shares up to your assets that you claimed an interest in on date of separation. You could not trace dollar for dollar exactly what you would have had on date of separation, could you, Mr. Minter?

A. I could not. No way.

Q. Because there were so many transactions, weren't there?

A. A lot.

MINTER v. MINTER

[111 N.C. App. 321 (1993)]

Q. And with regard to the stocks you inherited from your aunt, you could not trace those monies and identify exactly where those stocks would be with respect to assets you have an interest in on date of separation, could you?

A. Could not.

Q. And other than the Exxon and RJR, Sealand, you could not trace the inherited stocks from your mother to your assets as of date of separation that you had in your name. From those shares, you could not do that other than those two, could you?

A. You mean exactly the dollar? No, I could not. The only one I could do exactly has not changed at all.

Defendant also testified that he could not tell what monies initially funded the Smith Barney account, but did state the account held IBM dividends or proceeds from the IBM Credit Union account. He further testified that he considered the IBM stock and its proceeds were "joint", and that on occasion he had transferred monies from the Credit Union account to the other accounts, including the initial deposit to fund the Wachovia account. He stated that the purchase of the house and lots on Margaret Street were made with funds from these accounts, as were the purchases of the gold and silver investments. He also stated that he had on the date of his marriage a zero balance in the Smith Barney (later the Vantage) account, and that he had no money in any kind of checking or savings account. The expert witness hired to review the investment transactions of the accounts testified that "it's a practical impossibility to trace every transaction for anyone for a period of twenty-six years or fifteen years, let's say."

Based on the above evidence, the trial court found that the assets were marital. The trial court found that the defendant's separate property included 1200 shares of RJR stock, valued at $92,400.00, 1000 shares of Exxon stock, valued at $47,750.00, 310 shares of Amoco stock, valued at $19,956.25, 94 shares of Sealand stock, valued at $2350.00, and household furnishings valued at $44,800.00. Therefore, the court followed the statutory prescription in its findings of fact and awarded property that was shown by a preponderance of the evidence to be separate to the defendant. Only those assets as to which defendant did not meet his burden

were included as marital, in keeping with the mandate of N.C.G.S. § 50-20.

Upon appellate review of a case heard without a jury, the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Chandler v. Chandler*, 108 N.C. App. 66, 73, 422 S.E.2d 587, 592 (1992). While defendant did present some evidence tending to show that the property at issue might have had some separate property attributes, the trial judge determined that he failed to carry his burden of proof to the extent required by law. This Court has stated that "an equitable distribution order will not be disturbed unless the appellate court, upon consideration of the cold record, can determine that the division ordered . . . has resulted in a obvious miscarriage of justice." *Morris v. Morris*, 90 N.C. App. 94, 97, 367 S.E.2d 408, 410 (1988) (quoting *Alexander v. Alexander*, 68 N.C. App. 548, 315 S.E.2d 772 (1984)). We find that there was competent evidence in the record to support the trial court's finding that the defendant failed to carry his burden of proof, and therefore overrule defendant's first and second assignments of error.

II.

[2] The defendant next asserts that the trial court failed to consider defendant's contributions to the marital estate as a distributional factor under N.C.G.S. § 50-20(c)(12). As to this contention, we find merit in defendant's argument and accordingly remand for further findings of fact and conclusions of law based on the existing record without taking further evidence.

When dividing marital property, the trial court is required to consider the distributional factors and to make findings of fact supporting the division of property. *Armstrong v. Armstrong*, 322 N.C. 396, 368 S.E.2d 595 (1988). "In *any* order for the distribution of property made pursuant to this section, the court *shall* make written findings of fact that support the determination that marital property has been equitably divided." *Id.* at 403, 368 S.E.2d at 599 (emphasis in original). The factors that may be considered under § 50-20(c)(12) are those which relate to the source, availability, and use by a husband and wife of economic resources during the course of the marriage. *Smith v. Smith*, 314 N.C. 80, 331 S.E.2d 682 (1985). The separate property investments that appellant contributed to the marital estate over the twenty-five year marriage should have

STATE EX REL. ART MUSEUM BLDG. COMM. v. TRAVELERS INDEM. CO.

[111 N.C. App. 330 (1993)]

been considered by the trial court as a distributional factor under N.C.G.S. § 50-20(c)(12). *Haywood*, 106 N.C. App. at 95, 415 S.E.2d at 568.

In the case at bar, the court made extensive findings of fact reflecting the distributional factors. However, we are unable to discern from the record whether the court considered the separate property contributions of the appellant in making the award. "The purpose for the requirement of specific findings of fact that support the court's conclusion of law is to permit the appellate court on review to determine from the record whether the judgment—and the legal conclusions that underlie it—represent a correct application of the law." *Patton v. Patton*, 318 N.C. 404, 406, 348 S.E.2d 593, 595 (1986).

Since there are insufficient findings to determine the trial court's considerations of this factor, we remand for further findings of fact and entry of an appropriate order consistent with this opinion.

Remanded.

Judges WELLS and GREENE concur.