THERESA BROWN ROBERTSON (NOW BROWN), PLAINTIFF V.
FLOYD VINCENT ROBERTSON, DEFENDANT

No. COA05-229

(Filed 6 December 2005)

**Divorce— equitable distribution—valuation of business—insufficient supporting findings**

An equitable distribution order was remanded for further findings on the value of defendant's business where the court fixed the disputed separation date and then the fair market value of the business, but did not make findings regarding the evidence used to reach that figure. The court used a figure proffered by plaintiff's expert, but the expert used her own figures, which were not part of the report submitted to plaintiff and the court, and her valuation did not reflect the separation date determined by the court.

Appeal by defendant from judgment entered 15 June 2004 by Judge Charles M. Neaves in Stokes County District Court. Heard in the Court of Appeals 19 October 2005.

*Theodore M. Molitoris for plaintiff-appellee.*

*John J. Korzen for defendant-appellant.*

JOHN, Judge.

Floyd Vincent Robertson ("defendant") appeals the trial court's 15 June 2004 equitable distribution judgment ("the Judgment") awarding defendant's former spouse Theresa Brown Robertson ("plaintiff") 37.7 % of the marital estate. For the reasons discussed herein, we vacate and remand the Judgment.

Pertinent procedural and factual background information includes the following: On 29 December 1984, plaintiff and defendant married in Rockingham County, North Carolina. During the marriage, defendant owned and operated Parsons Well Company, a well-drilling and excavation business ("the business"). The parties divorced on 31 March 2003.

Following a hearing, the trial court entered the Judgment which included, *inter alia*, the following findings of fact:

**ROBERTSON v. ROBERTSON**

[174 N.C. App. 784 (2005)]

2. The parties were married to each other December 29, 1984 in Rockingham County, State of North Carolina and separated from one another on or about December 31, 2001. The parties were granted an absolute divorce in the District Court of Forsyth County, North Carolina on March 31, 2003.

. . . .

4. On the date of separation the parties['] marital estate consisted of the following marital property:

. . . .

Net [fair market value] of the well-drilling business including the fixed assets and liabilities is $230,000.00 less $13,694.00 (Defendant's separate interest)[.]

Based in part upon the foregoing findings of fact, the trial court concluded as a matter of law that "[a] 50/50 division after weighing distributive factors is not equitable and [defendant] is entitled to 62.3% of the net marital estate and [plaintiff] is entitled to 37.7% of the net marital estate." After allocating a vehicle to plaintiff and deducting from her award payments received previously from defendant, the trial court ordered defendant to pay plaintiff the sum of $90,000.00. Defendant appeals.

Initially, we note defendant has failed to present argument on one of his original six assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2005), the omitted assignment of error is deemed abandoned. We therefore limit our present review to those assignments of error properly preserved for appeal. .

Defendant's remaining assignments of error challenge the Judgment on grounds it is fatally infected by error in the trial court's valuation of the business. This assertion has merit.

"In an equitable distribution proceeding, the trial court is to determine the net fair market value of the [parties'] property based on the evidence offered by the parties." *Walter v. Walter*, 149 N.C. App. 723, 733, 561 S.E.2d 571, 577 (2002) (footnote and citations omitted). While there is no required method to follow in assessing the value of the parties' marital property, "the approach utilized must be 'sound[.]' " In other words, the trial court must determine whether the methodology underlying the testimony offered in support of the value of a marital asset is sufficiently valid and whether that methodology can

be properly applied to the facts in issue." *Id.* at 733, 561 S.E.2d at 577-78 (citations omitted). "In valuing a marital interest in a business, the task of the trial court is to arrive at a date of separation value which 'reasonably approximates' the net value of the business interest." *Offerman v. Offerman*, 137 N.C. App. 289, 292, 527 S.E.2d 684, 686 (2000) (quoting *Poore v. Poore*, 75 N.C. App. 414, 422, 331 S.E.2d 266, 272, *disc. review denied*, 314 N.C. 543, 335 S.E.2d 316 (1985)). The trial court's findings of fact regarding the value of a spouse's business should be specific, and the trial court should " 'clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied.' " *Offerman*, 137 N.C. at 292, 527 S.E.2d at 686 (quoting *Poore*, 75 N.C. App. at 422, 331 S.E.2d at 272). Where it appears that the trial court has " 'reasonably approximated the net value of the [business] . . . based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed' " on appeal. *Offerman*, 137 N.C. App. at 292, 527 S.E.2d at 686 (quoting *Poore*, 75 N.C. App. at 422, 331 S.E.2d at 272).

In *Offerman*, the trial court sought to value a candlestick manufacturing business owned equally by the parties. The plaintiff's evidence tended to show that, if capitalization of excess earnings was considered in valuating the business, the business had a fair market value of approximately $378,800.00 on the date of separation. However, the defendant's evidence tended to show that, where "capitalized earnings," "capitalized excess earnings," and "revenue multiple" methods of evaluation were applied, the business had a fair market value of approximately $37,391.00.

After receiving evidence from both parties, the trial court engaged in what it deemed an "independent assessment of the value of the corporation based upon . . . facts and circumstances . . . a reasonable buyer and seller would have considered on the date of separation," and it determined the value of the corporation was $365,000.00. 137 N.C. App. at 294-95, 527 S.E.2d at 687. On appeal, this Court concluded we were unable to determine whether the trial court's valuation "reasonably approxmiate[d]" the value of the parties' business, noting that

[o]ther than the . . . finding that its valuation was arrived at by considering the "full value of [a partially performed] contract," there [wa]s neither an indication of the valuation method relied upon by the trial court nor an indication as to what por-

**ROBERTSON v. ROBERTSON**

[174 N.C. App. 784 (2005)]

tion of the assigned value represent[ed] the value of [the business'] goodwill.

*Id.* at 296, 527 S.E.2d at 688. Consequently, the trial court's equitable distribution judgment was vacated and the case remanded for further findings.

In *Fitzgerald v. Fitzgerald*, 161 N.C. App. 414, 588 S.E.2d 517 (2003), the plaintiff husband owned a share in a surgical practice which his expert witness valued at $89,500.00 on the date of separation. The defendant's expert witness claimed her husband's share of the practice should have a date of separation value of $170,000.00. The trial court set the date of separation fair market value of the plaintiff's share at $125,000.00. On appeal, this Court stated the trial court appeared to have "rejected both experts' valuations"; however, because "the trial court failed to identify the evidence on which it based its valuation or the method it used to reach its [own] figure," it was necessary to reverse the court's judgment and remand the case "for further findings of fact on the valuation of [the] plaintiff's interest in his surgical practice." *Id.* at 420, 588 S.E.2d at 522.

In the case *sub judice*, the date of the parties' separation was disputed in their pleadings, defendant contending the date was 31 December 2001 and plaintiff asserting the date of 23 February 2002. Using both an "income approach" and a "cost approach," defendant's expert witness, Brian Napier ("Napier"), set the fair market value of the business on 31 December 2001 at $77,900.00 and $91,700.00 on 23 February 2002. However, plaintiff's expert witness, Kathy Diaz ("Diaz"), valued the business at $375,000.00 on 23 February 2002.

On direct examination, Diaz testified regarding the "four major differences" between her valuation and that of Napier, noting she and Napier examined different amounts of information, utilized different "discount rates" in reaching their conclusions, and made different adjustments regarding the appraisals and tax values of property. When asked whether there were "any significant changes . . . observed in the information provided to [her] between [23 February 2002] and December 31st of 2001 that would have led to an appreciably different value[,]" Diaz replied as follows:

No, not anything that I would have observed. Most of those items that I've talked about, we took into account.

After Diaz testified that she "actually took the extra step of going back and looking at taking their methodology but our numbers and

what the difference would be[,]" and that "the value [of the business] still rose to well over two hundred thousand dollars[,]" the following exchange occurred:

Q. So you applied their alternate methodology—

A. Methodology to our numbers—

Q. —to the same numbers?

A. —to the numbers that we had come up with for the adjustments that we had made, yes.

Q. And that number was what?

A. It was two hundred and—almost two hundred and thirty thousand dollars.

Q. Okay.

A. And the other—the second main difference—

DEFENDANT'S COUNSEL: Your Honor, I'm going to object to that in that I've been provided no documentation with respect to an expert opinion or any calculations. Pursuant to the rules of this Court and specifically stated in the pretrial order, they are required to provide me with fifteen days' notice of any alternate values that they propose. As such, I move to strike that information.

PLAINTIFF'S COUNSEL: We're not proposing that as a value.

THE WITNESS: No.

DEFENDANT'S COUNSEL: You Honor, she's testifying with respect to calculations she made and is testifying to a value therefrom. As such, I'm [en]titled to notice of that and including a written report regarding that.

THE COURT: I will deny your motion, and you may proceed with your witness.

On cross-examination, defense counsel questioned Diaz regarding her written report as follows:

Q. [On page 1, the report reads,] "Our analysis considers those facts and circumstances present at the company at the valuation date. Our opinion would most likely be different if another valuation date was used," correct?

A. Yes.

ROBERTSON v. ROBERTSON

[174 N.C. App. 784 (2005)]

Q. Okay. And so you didn't value the business as of December 31st, did you?

A. No.

Q. So your value only deals with February 23rd, 2002, correct?

A. Uh-huh.

Q. And so [plaintiff's counsel] asked you, you know, is it about the same. You don't know whether it's—you didn't do this calculation for that date—for 12/31, did you?

A. We did some in-house valuations that we did not include in these reports, but since it's not in this report, then [inaudible].

As noted above, the trial court set the parties' date of separation at "on or about" 31 December 2001, and further fixed the fair market value of the business at $230,000.00 on that date. Although the Judgment recites that the trial court's valuation "includ[ed] the fixed assets and liabilities" of the business, the Judgment contains no findings regarding the evidence used to reach the $230,000.00 figure.

We acknowledge that $230,000.00 is precisely the alternate figure proffered by Diaz on direct examination. However, Diaz qualified this number with testimony that all her alternate valuations were done "in-house," and that neither the conclusions nor calculations regarding those alternate values were part of the report submitted to plaintiff or the trial court. Further, although Diaz stated she arrived at the $230,000.00 figure by employing the same methodology as Napier, she further indicated her own "numbers" were utilized in reaching her conclusion. Finally, and most significantly, the record contains no indication Diaz intended her alternate figure to value the business as of 31 December 2001, the date of separation determined by the trial court. To the contrary, when viewed in its entirety, the testimony of Diaz reveals that each of her calculations was aimed at determining the fair market value of the business on 23 February 2002.

In light of the foregoing, we cannot say "the trial court . . . arrive[d] at a date of separation value which 'reasonably approximate[d]' the net value," *Offerman*, 137 N.C. App. at 292, 527 S.E.2d at 686, of the business. In addition, the Judgment contains no findings which "clearly indicate the evidence upon which [the trial court's] valuation[]" was based or "the valuation method or methods on which [the trial court] relied[.]" *Id.* (quotation marks and citation omitted).

We therefore vacate the Judgment and remand this case for entry of a new judgment, based upon the existing record, *see Minter v. Minter*, 111 N.C. App. 321, 329, 432 S.E.2d 720, 725, *disc. review denied*, 335 N.C. 176, 438 S.E.2d 201 (1993), and containing further and appropriate findings of fact regarding the fair market value of the business. We emphasize that our holding does not require voluminous findings from the trial court, but instead simply findings sufficiently adequate to reflect that it has performed the task imposed upon it by our case law. *See, e.g., Offerman*, 137 N.C. App. at 296, 527 S.E.2d at 688; *Fitzgerald*, 161 N.C. App. at 420, 588 S.E.2d at 522.

Vacated and Remanded.

Judges TYSON and JACKSON concur.