An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-201

Filed 18 February 2026

Wake County, No. 22CVD005293-910

CORI MCKEE-WHIPPLE, Plaintiff,

v.

DAVID WHIPPLE, Defendant.

Appeal by defendant from orders entered 30 August 2024 and 25 September 2024 by Judge Rhonda Young in Wake County District Court. Heard in the Court of Appeals 29 January 2026.

*Tortora Family Law, by Carrie B. Tortora, for plaintiff-appellee.*

*Sandlin Family Law Group, by Deborah Sandlin, for defendant-appellant.*

FLOOD, Judge.

Defendant David Whipple ("Husband") appeals from the trial court's orders on equitable distribution and his Rule 60(b)(5) motion. On appeal, Husband argues the trial court abused its discretion in, first, its valuation and distribution of certain stock assets in the equitable distribution order, and second, denying his Rule 60(b)(5) motion without considering evidence of the post-hearing valuation of the stock. Upon review, we affirm the trial court where the trial court reasonably valued the stock at

issue, acted within its discretion in the stock's distribution, and denied Husband's Rule 60(b)(5) motion on sufficiently reasoned grounds.

## I. Factual and Procedural Background

After experiencing marital difficulties and separating from Husband on 27 September 2021, Plaintiff Cori McKee-Whipple ("Wife") filed a complaint on 2 May 2022 against Husband, requesting, *inter alia*, equitable distribution of Husband and Wife's marital property. The trial court held an equitable distribution hearing on 22 May 2023; during the hearing, Wife presented evidence as to the valuation of certain marital property, namely, common stock in Measured Analytics, a privately held cyber insurance business Husband co-founded.

The evidence consisted, in relevant part, of the testimony of Gary Gerlach, a business valuation specialist testifying for Wife, and a 409A Valuation of Measured Analytics by Carta Valuations, LLC, a business valuation firm that had assessed Measured Analytics as of 1 September 2021. Gerlach testified that, pursuant to Wife's request, he had reviewed the Carta Valuations report and conducted independent research in the documents contained therein. He testified that Carta used a valuation method known as the "Backsolve Method," which is considered to be "the most reliable indicator of value of an early[-]stage enterprise[.]" He also testified that a "409 [v]aluation determines the fair market value of common stock in a private company to set the exercised price of an employee's stock option." Finally, Gerlach testified that the Carta Valuations report placed the value of the common stock of

Measured at 44 cents per share, and that this ultimate valuation was half of what the estimated value would have been were it not for Measured's privately held status and lack of marketability.

On 8 August 2023, the trial court entered an order on equitable distribution, which was amended twice before reaching its final state on 30 August 2024—the version of the equitable distribution order Husband now challenges on appeal. In the amended order, the trial court made, in relevant part, the following findings of fact:

> 33. During the marriage [Husband], with co-founder Jack Vines, started business that is startup business in the technology business offering cyber insurance and risk analysis. This business is incorporated in the state of Delaware as Measured Analytics and Insurance, Inc[.] . . . . [Husband] owns 15.8177% of Measured Analytics which is held in fully vested common stock. [Husband] holds 2,160,000 shares of fully vested common stock in Measured Analytics that are marital.
>
> 34. The headquarters of Measured Analytics is in Utah.
>
> 35. [Husband] and Mr. Vines together own 33% of Measured Analytics. [Husband] is a key employee of Measured Analytics.
>
> 36. [Husband] is the Chief Technology Officer of Measured Analytics and is on the board of the company. [Husband] travels to Utah for board meetings and will stay with Mr. Vines while in Utah for meetings.
>
> 37. For the past several years, Measured has hired independent appraisers, Carta Valuations, LLC . . . , to value the company's stock by way of 409A valuation. Specifically, Measured had 409A valuation report prepared dated September 24, 2021 (valuation date September 1,

2021, . . . which was approximately one week prior to the parties' separation.

38. Gary Gerlach testified on behalf of [Wife]. Mr. Gerlach is Director in Forensics, Valuation and Litigation Support at Elliott Davis, regional CPA firm. Mr. Gerlach's role at Elliott Davis is to value closely-held or privately-owned companies, which he has been doing for 30 years. Mr. Gerlach reviewed the 409A valuation prepared by Carta, as well as financial statements and tax returns of Measured, accounts receivable aging reports, the Restricted Stock Purchase Agreement, and other documents produced by Measured included in the "Series Seed 2 Financing Binder." In addition, Mr. Gerlach performed research, including review of the Valuation of Privately-Held Company Equity Securities Issues as Compensation Accounting & Valuation Guide published by the [American Institute of Certified Public Accountants], as well as various publications in the BV field regarding the use of Option Price Modeling (OPM) in early-stage valuations. Mr. Gerlach testified that the methodology used by Carta to value the common equity of Measured (backsolve method in conjunction with OPM) is commonly used to value the equity of early-stage technology companies. He further testified that a 409A valuation is an independent appraisal of the fair market value (FMV) of private company's common stock on the date of issuance, and the purpose of 409A valuation is to determine the FMV of equity in private company. Carta used the Fair Market Value standard in its 409A valuation. Mr. Gerlach testified that based on his expertise and research, the backsolve method used by Carta is the most reliable indicator of value of an early-stage enterprise if relevant and reliable transactions have occurred in the enterprise's equity securities. The formula was based on the Series Seed 2 preferred stock financing infusing $7 million of preferred stock at $2.12 per share in July 2021. Based on this financing, Carta backsolved the entire equity of Measured Analytics and then allocated this value among its various types of equity (preferred stock, common stock and stock options) using OPM.

39. Per the 2021 Carta report, the value of Measured common stock was $.44 on the date of separation. Per the capitalization table produced by Measured, [Husband]'s shares of common stock in Measured at the date of separation were 2,160,000, yielding total value of $950,400.00 for [Husband]'s Measured stock on the date of separation. However, the 409A valuation dated 9/1/2022 dropped to $0.35 per share. Thus, the total value of [Husband]'s shares would be $756,500.00 according to the more recent valuation.

40. There was no evidence presented that the decline in value of the Measured Analytics share [was] the result of any postseparation actions of [Husband] or Measured Analytics; thus, the decrease in value of the Measured Analytics stock must be classified as divisible property.

41. Measured Analytics is valued at $15,346,000.00 but is not cash flow positive at this time. A Venture Capital Firm invested 7.1 million dollars in Measured Analytics.

42. Mr. Gerlach noted that Measured Analytics does not have business track record nor does the business have a history of revenue or earnings.

43. There is no established market for the Measured Analytics stock, so the value of the stock was discounted by 50%.

44. On May 22, 2023, Measured Analytics And Insurance, Inc. executed "Waiver of Right of First Refusal" containing waivers of the rights of first refusal and waiver of co-sale rights . . . . Thus, in order for [Wife] to receive one-half of the 2,160,000 shares in Measured held in [Husband]'s name, [Wife] would be required to sign two documents: 1) the current Voting Agreement and Right of First Refusal; and 2) the Co-Sale Agreement. These two agreements already bind [Husband] in terms of his ownership rights in the existing 2,160,000 shares of Measured Stock held in [Husband]'s name. By [Wife] likewise executing these two

agreements, [Wife] would be placed in the same relative position to [Husband] in terms of her rights and obligations concerning the ownership of her shares of the Measured common stock.

45. [Wife] is not involved with and has never been involved with Measured Analytics.

46. [Wife] is not familiar with the business organization or its structure.

47. [Wife] is not familiar with cyber insurance.

48. If [Wife were] to receive common stock, she would have limited voting power in Measured.

. . . .

53. By greater weight of the evidence, the Court finds that the Measured Analytics common stock owned by [Husband] (2,160,000 shares) shall be distributed to [Husband] at value of $756,500.00. [Wife] has rebutted the presumption that an in-kind distribution is equitable, and the court finds that distributive award is equitable.

. . . .

56. The Court finds that the net value of the marital estate is $886,867.37.

57. According to N.C.G.S. § 50-20, an equal division of the marital and divisible assets is presumed equitable. This presumption has been rebutted and therefore and [sic] this Court finds that an unequal division, in favor of [Wife], of the net value of the marital and divisible assets is equitable.

58. [Husband] has the ability to pay the distributive award from the assets distributed to him herein. In addition, [Husband] testified that he has the ability to pay the distributive award if required.

59. [Husband] shall make distributive award in the amount of $578,250.07 to [Wife].

60. The N.C.[G.S.]. § 50-20(d) presumption, that an in-kind distribution of marital or divisible property is equitable, has been rebutted by a greater weight of the evidence, as an unequal division of the parties' net marital and divisible estate is equitable, and an in-kind distribution of the parties' assets and debts will not yield an equitable division of the parties' net martial divisible estate. That the presumption that an in-kind division is equitable is also rebutted by the fact that the most valuable marital asset is Measured Analytics.

61. An unequal division of the marital and divisible assets is equitable in that there are sufficient distributional factors to justify awarding [Wife] more than 50% of the net marital estate. [Wife] shall be awarded 60% of the net marital estate and [Husband] shall be awarded 40% of the net marital estate. . . .

Based on these findings, the trial court concluded as a matter of law that an equal and in-kind distribution was inappropriate with respect to the Measured stock and ordered Husband to pay a distributive award of $578,250.07 to Wife. Husband appealed the amended equitable distribution order.

Prior to the amendment of the equitable distribution order, Husband had moved the trial court for relief from judgment pursuant to Rule 60(b)(5) of our Rules of Civil Procedure, arguing that

Measured Analytics has failed as a business venture due to the vagaries of the economy, the volatilities of the marketplace, regulatory issues beyond the reasonable control of the Measured Analytics management team, the inherent risks facing a startup venture, and other reasons

to be presented at a hearing on this matter, but through no significant fault or active cause of [Husband].

The matter came on for hearing; during the hearing, the trial court orally indicated it was disinclined to allow the motion for relief from judgment because volatility was "the nature of stock." As such, it did not allow Husband to present evidence of the valuation of the Measured stock after the date of the equitable distribution hearing. The trial court entered an order denying his Rule 60(b)(5) motion, and Husband appealed once more.

## II. **Jurisdiction**

This Court has jurisdiction to hear this appeal pursuant to N.C.G.S. § 7A-27(b) (2023).

## III. **Standard of Review**

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Pegg v. Jones,* 187 N.C. App. 355, 358 (2007) (citations and internal quotation marks omitted), *aff'd per curiam,* 362 N.C. 343 (2008). "The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary." *Id.* (citation omitted).

The ultimate decision on "[e]quitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion."

*Wiencek-Adams v. Adams*, 331 N.C. 688, 691 (1992) (citation omitted). "Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry or a finding that the trial judge failed to comply with the statute[] . . . will establish an abuse of discretion." *Id.* (citations omitted).

Likewise, "the standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion." *Davis v. Davis*, 360 N.C. 518, 523 (2006).

## IV. <u>Analysis</u>

On appeal, Husband argues (A) the trial court's equitable distribution order reflects an abuse of discretion as to the valuation and distribution of the Measured stock, and (B) the trial court erred in denying Husband's Rule 60(b)(5) motion.

## A. Stock Valuation and Distribution

Husband first argues that the trial court abused its discretion in entering the equitable distribution order due to its alleged misreliance on the evidence at trial. Specifically, Husband argues the trial court's order (1) reflected legally insufficient factfinding; (2) improperly relied upon evidence that pertained to general stock valuations rather than valuations pertinent to the specific stock at issue; (3) in the alternative, should have ordered in-kind distribution of the measured stock; and (4) should not have ordered unequal distribution. We disagree.

### 1. *"Mere Recitation"*

At the threshold, we note that Husband, in arguing the trial court abused its discretion in its stock valuations, specifically challenges the trial court's findings of

fact, arguing the factfinding of the trial court "constitute[s] mere recitation of testimony rather than actual findings of fact." In arguing for the invalidity of these findings—namely, the trial court's findings of fact 38, 39, and 42—Husband specifically calls our attention to the fact that the trial court phrases its findings by stating that Gerlach "testified" or "noted" a given fact, or that a given finding was "[p]er the 2021 Carta report[.]"

This argument misunderstands our jurisprudence concerning the factfinding of a trial court. While we have, from time to time, overturned an order of a trial court on the basis that the factfinding reflected the "mere recitation" of testimony, *see, e.g. Long v. Long*, 160 N.C. App. 664, 668 (2003) (applying the "mere recitation" rule to the termination of alimony); *Schmeltzle v. Schmeltzle*, 147 N.C. App. 127, 132 (2001) (same), the thrust of the rule is that reciting testimony cannot serve as a replacement for the case-specific logical reasoning a trial court must employ when finding the facts necessary to support a legal ruling, *see Williamson v. Williamson*, 140 N.C. App. 362, 364 (2000) ("These findings are mere recitations of the evidence and are not the ultimate facts required to support the trial court's conclusions of law regarding the needs of the parties."). It is not a catch-all prohibition on a trial court indicating the evidentiary sources of specific facts found. Indeed, if such a rule were to exist, it would only serve to frustrate the trial court's obligation to establish that its findings are supported by competent evidence on the Record. *See Pegg,* 187 N.C. App. at 358.

Here, read in context, findings 38, 39, and 42 are clearly indications of the

testimony the trial court found credible and supportive of both the ultimate findings and legal conclusions in its equitable distribution order. As Husband challenges these findings strictly on the basis of their purported status as "mere recitation," his challenges to these findings of fact are without merit.

## 2. Specificity of Stock Valuation

Husband next argues the trial court abused its discretion in applying its stock valuation. While a trial court is not bound to a particular methodology, we have said that a trial court, when evaluating marital interest in a business, must "reasonably approximate[]" its value using a "sound valuation method":

> In an equitable distribution proceeding, the trial court is to determine the net fair market value of the parties' property based on the evidence offered by the parties. While there is no required method to follow in assessing the value of the parties' marital property, the approach utilized must be sound. In other words, the trial court must determine whether the methodology underlying the testimony offered in support of the value of a marital asset is sufficiently valid and whether that methodology can be properly applied to the facts in issue. In valuing a marital interest in a business, the task of the trial court is to arrive at a date of separation value which reasonably approximates the net value of the business interest. The trial court's findings of fact regarding the value of a spouse's business should be specific, and the trial court should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied.

*Robertson v. Robertson*, 174 N.C. App. 784, 785–86 (2005) (citation modified). "Where it appears that the trial court has reasonably approximated the net value of the

business based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed on appeal." *Id.* at 786 (citation modified).

In contesting the reasonableness of the trial court's stock valuation, Husband relies on *Stowe v. Stowe*, 272 N.C App. 423 (2020). In *Stowe*, we held that the trial court's valuation of the stock at issue was unreasonable where the trial court, first, based its valuation on an article whose author had no "background or qualifications to assert an opinion of value[,]" *id.* at 432; second, failed to consider several factors discussed in our precedent relating to intangible goodwill to the business, including "the history of the enterprise from its inception, the economic outlook in general and the condition and outlook of the specific industry in particular, the financial condition of the business, the company's earning capacity, [and] the market price of corporations engaged in the same or a similar line of business," *id.* at 435; and third, inequitably credited the same funds to a single spouse twice, *id.* at 436. Ultimately, we held the trial court abused its discretion in its equitable distribution order and reversed with respect to the stock valuation issue. *Id.* at 444–45.

Here, Husband argues the trial court's reliance on Gerlach's valuation testimony was unreasonable where Gerlach, in turn, relied on reports of the value of Measured from Carta Valuations, LLC. He specifically argues that, like the article in *Stowe*, the trial court's attribution of credibility to the Carta Valuations report was unreasonable because the valuation "does not identify the individual evaluator or his/her credentials or qualifications"; therefore, "there is no way of knowing if the

evaluator holds any credentials." He also argues reliance on the report was unreasonable because the valuation of the stock was done for tax purposes and therefore could not serve as a reliable metric for valuation in an equitable distribution case. Finally, he argues Gerlach could not testify to the contents of the Carta Valuations report because he lacked the requisite personal knowledge to verify that the methodology of the report was correctly applied.

In addressing these arguments, we first observe that Husband makes no contention this evidence was objected to at trial on admissibility grounds. To the extent that any of his arguments sound in admissibility, we will consider these arguments only for the purpose of determining whether the trial court's valuation was reasonable. *See Kabasan v. Kabasan*, 257 N.C. App. 436, 457–58 (2018) ("Our Supreme Court has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." (citation omitted)).

Having so established, we do not think Husband's arguments have demonstrated an abuse of discretion by the trial court. While Husband discusses at length the alleged similarities between this case and *Stowe*, *Stowe* differs from this case for at least two salient reasons. First, in *Stowe*, the trial court improperly relied upon the article of an individual author whose qualifications were unknown. 272 N.C App. at 432. Here, by contrast, the report at issue was attributed to an institutional author whose qualifications as an entity were apparent from the Record:

> Carta Valuations LLC has a team of over 50 valuation personnel with more than 175 collective years of experience in valuation. Team members have previous experience at some of the most well-known valuation shops and audit firms. Members of the team hold various credentials, including CFA, CPA, ABV, and CVA.

Second, the abuse of discretion holding in *Stowe* was predicated not on the identified instance of misreliance alone, but on the trial court's reliance on insubstantial evidence *alongside* inadequate findings on an issue material to its ultimate ruling and the improper double-crediting of a marital asset. *Id.* at 435–36. To apply *Stowe* in the way Husband asks this Court to would not only distort the significance of *Stowe*'s analysis of the trial court's misreliance on the article, but also reduce to a single factor what was, in actuality, a multi-pronged analysis of the trial court's reasoning—reasoning that amounted *only in sum* to an unreasonable valuation and consequent abuse of discretion. We therefore find this comparison inapposite.

Next, as to the alleged impropriety of using a tax valuation for equitable distribution purposes, Husband relies primarily on *Edwards v. Edwards*, 251 N.C. App. 549 (2017), a case he argues stands for the general proposition that "valuation of a house prepared for tax assessment is not sufficient evidence to value the house for distribution purposes[,]" and by analogy, that the tax valuation of the stock in this case cannot reasonably rely upon their taxable value. In *Edwards*, we did indeed observe that, per the practice of our Supreme Court, *certain* tax records are not competent to establish property value; namely, that "ad valorem tax records are not

competent to establish the market value of real property." *Id.* at 551 (citations omitted). But, in that case, we went on to clarify that this was due to the unique character of ad valorem tax records, not a general holding that documents prepared for tax purposes are, *ipso facto*, incompetent to establish market value. *Id.* ("It is well understood that it is the custom of the assessors to fix a uniform, rather than an actual, valuation." (citation omitted)). Here, there is no argument that the Carta Valuations report displayed the degree of variance from the true market value of the Measured stock that ad valorem tax records typically have from the true market value of real property. In fact, Gerlach—who was stipulated at trial by Husband to be an expert and testified without objection at trial—testified that the values reflected in the Carta Valuations report were prepared to reflect the actual market value of the Measured stock. Husband has, therefore, not established the trial court's valuation was unreasonable on this basis.

Finally, as to Husband's arguments pertaining to Gerlach's personal knowledge of the Carta Valuations report, where Husband did not challenge the admissibility of the testimony, this issue goes to the weight of the evidence—a matter delegated to the trial court as factfinder, *Watson v. Watson*, 261 N.C. App. 94, 101 (2018)—and does not, standing alone, establish the trial court unreasonably valued the stock at issue. This is especially the case given that, on appeal, Husband has not pointed to any alternative numerical analysis or different result he would have had Gerlach, the Carta Valuations report, or the trial court reach; rather, he contests only

the reasonableness of the valuation and the thoroughness of the trial court's factfinding relative to extrinsic standards. But "there is no required method to follow in assessing the value of the parties' marital property," *Robertson*, 174 N.C. App. at 785; if Husband believed a more thorough or detailed inquiry regarding the value of the Measured stock would have yielded a more appropriate figure, he was at liberty to present methodology he felt was more thorough as evidence to the trier of fact.

Given the case- and fact-specific nature of our reasonableness inquiry, *see id.*, Husband's failure to demonstrate any methodological errors occurred at trial leaves him far from the mark of meeting his burden to show the trial court's valuation was unreasonable—let alone so unreasonable as to constitute an abuse of discretion. *Wachovia Bank v. Clean River Corp.*, 178 N.C. App. 528, 531 (2006) ("To demonstrate an abuse of discretion, *the appellant* must show that the trial court's ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision." (emphasis in original) (citation omitted)). Thus, we affirm the trial court's equitable distribution order as to its valuation of the stock.

### 3. In-Kind Distribution

Husband further argues the trial court abused its discretion in failing to order in-kind distribution of the Measured stock. Under N.C.G.S. § 50-20(e),

> it shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable. This presumption may be rebutted by the greater weight of the evidence, or by evidence that the property is a closely held business entity or is otherwise not susceptible of

> division in-kind. In any action in which the presumption is rebutted, the court in lieu of in-kind distribution shall provide for a distributive award in order to achieve equity between the parties. The court may provide for a distributive award to facilitate, effectuate, or supplement a distribution of marital or divisible property. The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.

N.C.G.S. § 50-20(e) (2023); *see also Distribution*, Black's Law Dictionary (12th ed. 2024) (defining "distribution in kind" as "[a] transfer of property in its original state, such as a distribution of land instead of the proceeds of its sale"). We have interpreted this statute to require that the trial court must presumptively distribute marital assets in-kind and that, "if the trial court determines that the presumption of an in-kind distribution has been rebutted, it must make findings of fact and conclusions of law in support of that determination." *Urciolo v. Urciolo*, 166 N.C. App. 504, 507 (2004). Where no such findings are made, we must reverse the trial court's determination and remand for proper findings. *Id.*

Here, the trial court made findings on the differences in the parties' positions rebutting the presumption of distribution in-kind:

> 33. During the marriage [Husband], with co-founder Jack Vines, started business that is startup business in the technology business offering cyber insurance and risk analysis. This business is incorporated in the state of Delaware as Measured Analytics and Insurance, Inc . . . . [Husband] owns 15.8177% of Measured Analytics which is held in fully vested common stock. [Husband] holds 2,160,000 shares of fully vested common stock in Measured Analytics that are marital.

34. The headquarters of Measured Analytics is in Utah.

35. [Husband] and Mr. Vines together own 33% of Measured Analytics. [Husband] is key employee of Measured Analytics.

. . . .

45. [Wife] is not involved with and has never been involved with Measured Analytics.

46. [Wife] is not familiar with the business organization or its structure.

47. [Wife] is not familiar with cyber insurance.

48. If [Wife were] to receive common stock, she would have limited voting power in Measured.

From these findings of fact, the trial court concluded as a matter of law that, "[a]ccording to N.C.G.S. [§] 50-20(e) it shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable, unless rebutted. This presumption has been rebutted by the greater weight of the evidence."

In light of these findings, the trial court sufficiently rebutted the presumption of in-kind distribution with respect to the Measured stock. While Husband makes further challenges to the characterization of Wife's involvement with Measured—specifically, that "[t]here is nothing in the [R]ecord that all the shareholders have a close relationship or may somehow operate to [Wife]'s detriment"—there is no meaningful contention that Husband and Wife were similarly situated within, or familiar with, Measured. Rather, the trial court found, *inter alia*, that Wife has not

been involved with Measured, is not familiar with the business structure, and is not familiar with cyber insurance. While a ruling to the contrary may have been appropriate, as with the issue of valuation, many of Husband's arguments pertain to the characterization, weight, and credibility assigned to the evidence in making the ultimate distributive determination, which is the purview of the trier of fact. *Watson*, 261 N.C. App. at 101. Insofar as Husband further argues the trial court's conclusion was unsupported because it made no findings Measured was closely held, no such specific finding is required. *See* N.C.G.S. § 50-20(e) (2023) ("This presumption may be rebutted by the greater weight of the evidence, *or* by evidence that the property is a closely held business entity *or* is otherwise not susceptible of division in-kind." (emphasis added)).

Husband also argues the trial court mischaracterized the nature of the Measured stock as "liquid" in Finding of Fact 55(f). Assuming *arguendo* that the stock was, as Husband contends, an illiquid asset, this factual error does not, standing alone, warrant a finding of abuse of discretion. The trial court otherwise explicitly found that Husband had the ability to pay the distributive award, and he does not contend the illiquid nature of the asset impeded that ability. As the trial court's inquiry into the liquidity of an asset is designed to answer the ultimate question of whether the paying party has the ability to make the distribution award, *see Comstock v. Comstock*, 240 N.C. App. 304, 321 (2015) (holding the trial court's distributive award did not reflect an abuse of discretion where "a separate liquid

asset[] was available as a resource from which the trial court could order a distributive award"), an unsupported finding as to the liquidity of a specific asset does not demonstrate an abuse of discretion where findings were otherwise sufficient to show Husband could pay the distributive award, *cf. Squires v. Squires*, 178 N.C. App. 251, 267 (2006) (holding the trial court abused its discretion in failing to distribute assets in-kind where "the [trial] court failed to make the required findings that defendant had sufficient liquid assets from which to pay the distributive award").

As the distinctions relied upon by the trial court were supported by the evidence and the trial court made the required findings, we cannot say the trial court acted outside its discretion in declining to distribute the Measured stock in-kind.

### *4. Unequal Distribution*

Husband next argues the trial court abused its discretion when it ordered an unequal distribution of marital assets. In the course of his argument, Husband challenges the trial court's findings of fact 6, 55(a), 55(c), 55(d), 55(f), 55(g), 57, 58, 59, 60, and 61. He also challenges conclusion of law 6, arguing the aggregate error in the findings of fact amounts to an abuse of discretion.

Under N.C.G.S. § 50-20(c),

> [t]here shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably.

N.C.G.S. § 50-20(c) (2023). "'When evidence tending to show that an equal division of marital property would not be equitable is admitted' in an equitable distribution proceeding, the trial court has wide discretion to divide the property unequally." *Barlowe v. Barlowe*, 113 N.C. App. 797, 799 (1994) (quoting *White v. White,* 312 N.C. 770, 777 (1985)), *aff'd*, 339 N.C. 732 (1995). No specific factor in determining the propriety of an unequal distribution is determinative, and "we [will] []not say that the evidence fails to show any rational basis for the distribution" simply because the trial court "could have weighed the evidence differently . . . ." *White*, 312 N.C. at 778.

The first of the challenged findings of fact, finding 6, reads as follows in relevant part: "Plaintiff [(Wife)] has full custody of his adopted son from prior marriage, Brenner Whipple[.]" Wife is the plaintiff in this case; however, the use of the male pronoun "his," together with the uncontroverted status of Brenner Whipple as residing in the custody of Husband, indicates that the reference to "Plaintiff" in this excerpt is a clerical error. "Appellate courts do not set aside verdicts and judgments for technical or harmless error." *Icenhour v. Icenhour*, 298 N.C. App. 502, 511 (2025) (citation omitted).

Next, finding 55(a) reads as follows:

> N.C.[G.S. §] 50-20(c)(1). The income, property, and liabilities of each party at the time the division of property is to become effective. At the time of the hearing in May 2023 [Wife] was earning $180,000.00 and [Husband] was earning $150,000.00. At the [date of separation] [Wife] was not earning an income. [Husband] has the ability to earn more income in the corporate world than the income he was

> earning at Measured. [Husband] has the ability to earn additional income to pay distributive award to [Wife]. [Husband] testified that he has the ability to pay a distributive award.

Husband argues this finding is unsupported because evidence of earnings between the parties at various other points before and during their marriage does not support a finding of disparity between the parties' ability to earn more money than the other. In support of this position, Husband points us to additional information in the Record he contends establishes there was relative parity between Husband's and Wife's financial positions. But, as the additional information Husband points to supplements—rather than conflicts with—finding 55(a), this is a question of weight and emphasis, not sufficiency. *See White*, 312 N.C. at 778. Husband also argues that this finding is unsupported with respect to his ability to pay because he testified during the hearing that paying the distributive award would "hurt [his] current financial position." Unfavorable outcomes to Husband's financial position are not mutually exclusive with his ability to pay the distributive award and are, generally speaking, a natural consequence of being required to pay a sum of money. This finding of fact is supported.

Finding 55(c) reads as follows:

> N.C.[G.S. §] 50-20(c)(3). The need of parent with custody of a child or children of the marriage to occupy or own the marital residence and to use or own its household effects. [Wife] has primary physical custody of the minor child Maya. [Wife] and [Husband] share custody of the minor child Landon. The marital residence is mixed property and

shall be distributed to [Husband]. Due to the expectation that marital residence will be distributed to [Husband], an unequal distribution of martial and divisible property to [Wife] is equitable.

Husband argues this finding is unsupported because Husband "had custody of Brenner full time and custody of Landon half of the time and visitation with Maya on a temporary basis," arguing the trial court erred because "both of the parties were in need of housing for the children and equally in need." The trial court's finding that "[Wife] has primary physical custody of the minor child Maya" is not incompatible with Husband having temporary visitation, and, as with the previous finding, the fact that the trial court opted to highlight certain facts in evidence over others does not render findings as to the highlighted facts unsupported. *See id*. This finding of fact is supported.

Finding 55(d) reads as follows:

> N.C.[G.S. §] 50-20(c)(5). The expectation of pension, retirement, or other deferred compensation rights that are not marital property. [Wife] did not have retirement at the [date of separation] but had separate retirement totaling $14,719.55 at trial. [Husband] had separate retirement totaling $113,205.98 at the [date of separation] which increased to $126,096.90 as of October 31, 2022. [Husband] has total of $1,842,262.91 in separate and divisible assets from retirement, brokerage and IRA accounts. Due to the expectation of pension, retirement and other deferred compensation rights of [Husband] at the time of the division of property, an unequal distribution of marital and divisible property to [Wife] is equitable.

Husband argues this finding is unsupported because "both parties had little

retirement as of the date of the trial." Husband concedes he has "only $126,096.90"

in a retirement account and "does have investments from the sale of his prior business

[] that is his separate property and not subject to division[,]" reflecting the trial court's

findings as to his separately held assets. This constitutes another challenge to the

trial court's characterizations and conclusions, not the sufficiency of the evidence. *See*

*id.* This finding of fact is supported.

Findings 55(f) and 55(g) read as follows, respectively:

> N.C.[G.S. §] 50-20(c)(9). The liquid or nonliquid character of all marital property and divisible property owned by [Wife] and [Husband]. [Husband] has access to and shall be distributed 2,160,000 in stocks from Measured which is liquid asset. [Husband] shall also be distributed the nonliquid real property assets. Due to the liquid and nonliquid distributions, an unequal distribution of marital and divisible property to [Wife] is equitable.
>
> . . . . The tax consequences of any distribution by [Husband]. The Court has considered the Federal and State consequences that [Husband] could incur to pay distributive award to [Wife]. [Husband] will incur tax consequences if he chooses to sell stocks or liquidate IRA accounts to pay distributive award.

Husband argues these findings are unsupported because the Measured stock was not

a liquid asset. As stated previously, we assume *arguendo* the Measured stock was

illiquid, and any finding of fact predicated on the liquidity of the Measured stock was

erroneous.

Finding 57 reads as follows: "According to N.C.G.S[.] § 50-20, an equal division

of the marital and divisible assets is presumed equitable. This presumption has been

rebutted and therefore and this Court finds that an unequal division, in favor of [Wife], of the net value of the marital and divisible assets is equitable." Husband correctly argues this finding would be more appropriately labeled a conclusion of law. *See Isom v. Duncan*, 279 N.C. App. 171, 188 (2021) ("The labels 'findings of fact' and 'conclusions of law' employed by the lower tribunal in a written order do not determine the nature of our standard of review. If the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' as a conclusion *de novo*." (citation modified)). As a legal conclusion, this statement was supported by the trial court's findings of fact. *See Pegg,* 187 N.C. App. at 358 ("The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." (citations and internal quotation marks omitted)).

Finding 58 reads as follows: "[Husband] has the ability to pay the distributive award from the assets distributed to him herein. In addition, [Husband] testified that he has the ability to pay the distributive award if required." As discussed with respect to finding 55(d), this finding of fact is supported. To the extent Husband further argues the finding is erroneous with respect to his ability to pay the award because doing so would require the liquidation of a separate asset, the trial court was permitted to take that fact into consideration. *Comstock*, 240 N.C. App. at 321.

At points throughout his brief, Husband purports to challenge finding 59, yet

he has offered no substantive discussion of this finding. Any challenge to this finding is therefore abandoned. N.C. R. App. P. 28(b)(6) (2025) ("Issues . . . in support of which no reason or argument is stated[] will be taken as abandoned.").

Finding 60 reads as follows:

> The N.C.[G.S. §] 50-20(d) presumption, that an in-kind distribution of marital or divisible property is equitable, has been rebutted by greater weight of the evidence, as an unequal division of the parties' net marital and divisible estate is equitable, and an in-kind distribution of the parties' assets and debts will not yield an equitable division of the parties' net martial divisible estate. That the presumption that an in-kind division is equitable is also rebutted by the fact that the most valuable marital asset is Measured Analytics.

Husband correctly argues this finding would be more appropriately labeled a conclusion of law. *See Isom*, 279 N.C. App. at 188. As a legal conclusion, this statement was supported by the trial court's findings of fact. *See Pegg,* 187 N.C. App. at 358.

Finding 61 reads, in relevant part, as follows:

> An unequal division of the marital and divisible assets is equitable in that there are sufficient distributional factors to justify awarding Plaintiff more than 50% of the net marital estate. Plaintiff shall be awarded 60% of the net marital estate and Defendant shall be awarded 40% of the net marital estate, not including the Marazzi Trail or Beach Properties which are distributed equally[.]

Husband argues this finding is unsupported by virtue of the trial court's purportedly incorrect valuation of the marital estate. For the reasons discussed above, Husband

has not shown the trial court abused its discretion in its valuation of the estate.

Finally, conclusion of law 6 reads as follows: "According to N.C.G.S[.] § 50-20, an equal division of the marital and divisible assets is presumed equitable. This presumption has been rebutted and this Court finds that an unequal division of the net value of the marital and divisible assets is equitable." As discussed above, the trial court's findings of fact support this conclusion of law. *See id.*

As with Husband's argument pertaining to in-kind distribution, the only error Husband has demonstrated in the trial court's determination that an unequal distribution is equitable is in the characterization of the Measured stock as "liquid." As discussed previously, however, the trial court's inquiry into the liquidity of an asset is designed to answer the ultimate question of whether the paying party has the ability to make the distribution award. *See Comstock*, 240 N.C. App. at 321. Here, where the trial court's unequal division of assets and consequent order of a distributive award to Wife was otherwise based on supported findings that Husband had the ability to pay the distributive award, we cannot say the unequal distribution amounted to an abuse of discretion, even assuming the characterization of the Measured stock as "liquid" was erroneous.

## B. Rule 60(b)(5) Motion

Finally, Husband argues the trial court erred in denying his Rule 60(b)(5) motion because the trial court improperly refused to consider evidence as to the value of the Measured stock that became available only after the equitable distribution

hearing. Under Rule 60(b)(5),

> [o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding . . . [because] [t]he judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application[.]

N.C.G.S. § 1A-1, Rule 60(b)(5) (2023). "Rule 60(b) is an unusual rule, having been described as 'a grand reservoir of equitable power.'" *Carter v. Clowers,* 102 N.C. App. 247, 253 (1991) (quoting *Jim Walter Homes, Inc. v. Peartree,* 28 N.C. App. 709, 712 (1976)). "The purpose of Rule 60(b) is to strike a proper balance between the conflicting principles of finality and relief from unjust judgments." *Id.* at 254.

Here, although Husband argues the trial court erred in its ruling on his Rule 60(b)(5) motion because it refused to hear evidence pertaining to the valuation of Measured after the equitable distribution hearing, Husband has made no arguments pertaining to the admissibility of evidence; rather, he challenges only the ultimate ruling of the trial court on his Rule 60(b)(5) motion. Notwithstanding the trial court's refusal to hear evidence pertaining to Measured's post-hoc valuation, the trial court specified on the Record that it was inclined to deny Husband's Rule 60(b)(5) motion, even with the understanding that the stock had little to no value at the time of the hearing on the motion:

> [HUSBAND'S TRIAL COUNSEL]: That's our argument, Your Honor that it's highly volatile stock and it's gone from thirty-five cents per share to twenty cents per share of –

less than a month after your order was entered, Your Honor, it went down to two cents per share.

THE COURT: So at the time the order was entered it was – I mean at – and that's just the nature of stock. That's the nature of business, but I mean at the time of the trial I had a value that was given to me. There was nothing that you guys decided to say, hey, that's not what we think the value is. We think – they think the value is seven hundred thousand, we think the value is three hundred thousand. Or whatever that number was. But on the day of trial, that was the number that the Court used, that was the number that was presented, that was not disputed. Or when I say not disputed, that was – there was nothing that was given to me by [Husband] . . . that would have given the court any reason to adjust my number as to the value of the property.

. . . .

[HUSBAND'S TRIAL COUNSEL:] . . . [A]re you allowing me to put on my evidence of the new value or lack of value of Measured Analytics, or no? I just want to understand what I'm being permitted to put on evidence today[.]

THE COURT: No. Their Motion In Limine is going to be granted.

The trial court also made clear it accounted for the stock's volatility when determining the allocation of assets during the equitable distribution hearing.

While perhaps an unfortunate result with the benefit of retrospect, the trial court clarified its position that its initial distribution took the volatility of Measured into account. It also clarified that, given the "nature of stock[,]" it would not be inclined to grant a Rule 60(b)(5) motion regardless of the post-hoc valuation of Measured. We cannot say the trial court's reasoning, even presented as categorical,

constituted an abuse of discretion when the trial court considered market volatility in determining the distribution of marital assets. *See Davis*, 360 N.C. at 523.

## IV. <u>Conclusion</u>

Husband has not shown an abuse of discretion by the trial court in its valuation of marital property, division of marital property, distribution of marital property, or denial of his Rule 60(b)(5) motion. We therefore affirm the trial court in full.

AFFIRMED.

Judges COLLINS and MURRY concur.

Report per Rule 30(e).